## STATE v. MORROW.

1.  AN EXCEPTION alleging error in a ruling which is not shown by the appeal record to have been made, not considered.

2.  IBID.—OBJECTION TO THE INDICTMENT for failing to charge that the act complained of was done *feloniously*, not considered, no ruling upon this point having been made or asked for in the Circuit Court, and no exception taken to such omission before the jury was sworn, at which time alone the statute permits it to be taken.

3.  ABORTION—CHARGING JURIES.—An indictment charged the crime of procuring and attempting to procure abortion by means of deleterious drugs, and the prosecution offered no evidence of the use of any other means, but evidence of abortion produced by instruments was offered by defendant. *Held*, that error could not be imputed by defendant to the trial judge in failing to charge that the prosecution was limited in its evidence, and the jury in their verdict, to the means charged in the indictment, when no request so to charge was made, and the allegation of abortion produced by the use of instruments was made only by way of defence.

4.  AN EXCEPTION based upon a misconception of the judge's charge to the jury, when considered as a whole, overruled.

5.  ABORTION—VERDICT—IMMATERIAL ERROR.—Where an indictment charges defendant in its first count with procuring an abortion, and in its second count with administering drugs with intent to cause abortion, and the jury find the defendant guilty generally, error in the charge as to the second count only would be immaterial.

6.  THE CHARGE TO THE JURY must be understood as applying to the case before the court as made by the evidence.

7.  ABORTION—ATTEMPT.—If the abortion in this case had been actually produced by the use of instruments, and the defendant had no connection therewith, he might still be convicted under the statute of an attempt to produce abortion by the administration of drugs by him.

8.  IBID.—IBID.—Under the statute of this State, one may be convicted of causing abortion by the use of drugs, without any allegation or proof of force or duress on his part.

9. ABORTION—OVERT ACTS—JURISDICTION.—Where a drug is procured and administered by defendant in this State to a woman here with child, with intent to cause abortion, but the abortion is afterwards produced by other drugs sent by this defendant from beyond the State, it cannot be said that no overt act was committed by him in this State.

10. IBID.—ACTS DONE BEYOND SEAS—JURISDICTION.—The courts of this State have jurisdiction to try a person, who has voluntarily submitted himself to their jurisdiction, under a charge of abortion, when it appears that he delivered to a woman within this State, by an innocent agent, to wit, the United States mail, drugs sent by him from beyond the limits of this State for the purpose of procuring an abortion, and that he counselled their use for such purpose, and that the intended abortion was thereby caused. And this would be so, whether the matter charged is a common law crime or only a statutory offence.

Before WALLACE, J., Richland, October, 1892.

Indictment against James Morrow for abortion and for intent to procure abortion. A plea to the jurisdiction was overruled, on the ground "that the Court of General Sessions for Richland County aforesaid had jurisdiction to try the defendant for the crime laid to his charge." The judge charged the jury as follows:

The real issue in the case, or issues, are within a narrow compass, and when I have explained them to you, I will have nothing more to say. The indictment is brought under the following statute: "That any person who shall administer to any woman with child, or prescribe for any such woman, or suggest to, or advise, or procure her to take any medicine, substance, drug, or thing whatever, or who shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with the intent thereby to cause or procure the miscarriage, or abortion, or premature labor of any such woman, unless the same shall have been necessary to preserve her life, or the life of such child, shall, in case the death of such child or such woman result in whole or in part therefrom, be deemed guilty of a felony."

There are two counts in the indictment—one charging the defendant with having procured and advised the taking of a certain drug with the intent to produce abortion, and that in

consequence of such abortion the death of the woman was produced. That is the first count. That is your first inquiry, whether or not this defendant did that. If he did, he is guilty under this act; if he did not, he is not guilty under this first section of the act. In order to convict him under this act, and on this indictment, you must be satisfied beyond a reasonable doubt of his guilt. You don't decide this case as you decide cases on the civil side of the court, by the preponderance of the testimony; because, whenever a defendant is brought into court and tried on a charge of any violation of the criminal laws of the State, no matter how small or inferior the crime may be, he comes into court under the legal presumption of innocence. Every man, in other words, is presumed to be innocent until he is proven guilty; but when the testimony in this case establishes his guilt beyond a reasonable doubt, then the presumption of innocence fades out of the case, and the jury must so find. But unless that presumption of innocence is rebutted, it stands in lieu of proof of innocence; and it so stands until the weight of evidence satisfies the jury beyond a reasonable doubt of his guilt; and when it does, then he must be found guilty; if it does not do that, he must be acquitted.

The second count in the indictment is brought under the second clause or section of this statute, and that clause of the statute is as follows: "That any person who shall administer to any woman with child, or prescribe, or procure, or provide for any such woman, or advise or procure any such woman to take, any medicine, drug, substance or thing whatever, or shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or procure the miscarriage, or abortion, or premature labor, of any such woman, shall, upon conviction thereof, be punished," &c. That section is the same as the other, as far as it goes; the other provides that if the defendant shall do what is in this section, and the death of the woman result, then his crime is a felony. If he should do what this section provides, and no death should result therefrom, but only an intent to procure abortion is established against him, by the means recited in this statute, then the act does not declare that act to be

a felony; and, in order to convict him of that, you will have to be satisfied beyond a reasonable doubt that he attempted to procure an abortion, intended to do it, by the means stated here in the section I have read to you.

Those are the issues, the only issues. Whether they have been proven or not, is for you to decide; whether they have been proven beyond a reasonable doubt, is for you to determine for yourselves. If you are satisfied beyond a reasonable doubt that either or both of these offences are made out, you will have to convict him according to the degree of offence described in the act and set forth in the indictment. If you are not satisfied beyond a reasonable doubt that he procured an abortion, intending to do it by the means prescribed in the act, you will have to say not guilty on the first count. If you are of opinion, and are satisfied of it beyond a reasonable doubt, that he attempted to procure an abortion, intended to do it, by the means set out here in this act, but that such means did not accomplish his purpose, but that the abortion was procured by other means, to which he was not a party, then you cannot convict him on the first count, but may on the second, if you are satisfied beyond a reasonable doubt.

The solicitor asks me to charge you: "That if the jury believe from the evidence, beyond a reasonable doubt, that the defendant, James H. Morrow, administered to Colie Fowler while with child, or prescribed, or procured, or provided for said woman while with child, or advised or procured said Colie Fowler while with child to take, any medicine, drug, substance or thing whatever, with intent thereby to cause or procure the miscarriage, or abortion, or premature labor, of said Colie Fowler, [he] is guilty of the offence charged in the indictment." I charge you that in its application to the second count in the indictment. That request does not contemplate the death of the woman.

"Second. That, under the second section of the act, it is not necessary to prove that the defendant actually administered the noxious drug, or actually advised the use of any instrument or any other means to bring about an abortion; but that, if the jury believe beyond a reasonable doubt that, from the evidence

in the case, the defendant, by his counsel and advice, induced the deceased to resort to any such means, or to make any such effort to bring about the abortion or premature birth, then the defendant is guilty under the second count of the indictment." I charge you that; there is no difference of opinion on the other side in regard to it.

I do not know that it is necessary I should say anything else to you. I have undertaken to make as clear as I could what the act is. I have undertaken to make clear to you what the real issue of the case is, what you have to decide, and that issue is one of fact. Did the defendant, by anything he did within the scope of the means described in the act, endeavor to procure an abortion upon Colie Fowler, and, in consequence of such intent and conduct upon his part, was an abortion produced and did death ensue? If you are satisfied beyond a reasonable doubt, he is guilty on the first count. If you are not satisfied beyond a reasonable doubt, you must acquit him on the first count. If you should acquit him on the first count, then you may inquire as to the second count, which merely charges him with the intent and an effort to procure the abortion; if you are satisfied beyond a reasonable doubt that he did, then you must convict him on that count. If you are not satisfied beyond a reasonable doubt that he did, then you must acquit him on the second count. If you are not satisfied beyond a reasonable doubt that the defendant is guilty, why, you will have to say not guilty. If you are satisfied beyond a reasonable doubt that he is guilty on the first count, then you may simply write the word "guilty" on the back of the indictment, for that will include it. But if you are not satisfied beyond a reasonable doubt that he is guilty of the first count, and are satisfied beyond a reasonable doubt that he is guilty on the second count, then say not guilty on the first count, but guilty on the second count. If you are not satisfied beyond a reasonable doubt that he is guilty of either, say not guilty. Take the record.

Mr. Melton (for defendant): The rule, as I understand it, is that the plea with reference to the jurisdiction of the court can be entertained at any time; now I beg to say to the court that

I interposed the plea at the very first moment I could, because it couldn't be interposed except during the argument.

The Court: That is not a matter for the jury, and that is the reason I have said nothing to them about it. It is a matter entirely for the court. I may say I think the court has jurisdiction. I own, there is room for difference of opinion about it, but from what thinking I have been able to do in regard to it, I have reached the conclusion, that the court has jurisdiction, for this reason—the act alleged was committed in this State. To illustrate: Suppose a man, in a foreign jurisdiction, should procure a firearm, and charge it with suitable ammunition, intending to use it against a person in this State. So far, there is no crime, no offence, so far as I know, against the law of any foreign jurisdiction, not a matter of which any foreign jurisdiction could take cognizance. But if he comes in this State, having prepared himself, formed his intention in a foreign jurisdiction, and executes his purpose here, the offence is committed here, and he is within the jurisdiction of this court. Suppose a man in a foreign jurisdiction prepares what is sometimes described as an infernal machine, intending to use it upon a person in this State, his intention is formed, and the means of death are prepared in a foreign jurisdiction; no offence committed still. But when he comes in this jurisdiction, or sends it into this jurisdiction, there is no offence, if the implement is never delivered. If it couldn't be delivered by the express company, if it should be sent by means of that agency, no offence is committed; it is only committed when the instrument is delivered, and perhaps the explosion took place, then the offence is committed. No offence has been committed within the jurisdiction of any foreign power, of which that power could take cognizance, nothing for which he could be tried. If he is not responsible here, he is not responsible anywhere.

The application of this illustration to the case in hand, I think, is obvious. A man in a foreign jurisdiction—we will take a suppositious case—only prepares the means of executing an unlawful purpose in this State, intending to do it, and it is transmitted by an agency; up to that time no offence has been committed, no offence within the jurisdiction of a foreign

power, whatever.   He can't be tried there for what has been done; if he can't be tried here, he can't be tried anywhere. Suppose it is done in the State of New York, the State of New York cannot try a citizen of its own for a violation of the laws of this State; she can only try a citizen for the violation of her own laws.   Upon the supposition that he has simply prepared the means of doing an unlawful act, intends to put them in operation, but has not done it, can't do it, there must be something in which the court can act, something it can take hold of, in order to give the court jurisdiction to try him.   The act is committed in this State, and is not committed until the delivery of the unlawful means for the unlawful purpose is accomplished.   That's my view of it.   I think this State would have jurisdiction of this offence if the facts alleged are true.

The jury found a verdict of "guilty," and defendant was duly sentenced.

Defendant appealed on the following grounds:

1. For that his honor held that the Court of General Sessions for Richland County, South Carolina, had jurisdiction to try and determine the charge against the defendant, James H. Morrow, for abortion, notwithstanding that it appeared in the evidence, and was undisputed, that the said James H. Morrow was not in this State at the time the alleged abortion was committed; and it did not appear that said defendant, James H. Morrow, "inflicted any injury" upon the said Coley Fowler.

2. For that his honor ruled, in substance, that if the said James H. Morrow, being without this State, transmitted to the said Coley Fowler the means of bringing on an abortion, and advised its use, and the said Coley Fowler, without being thereto compelled by force or duress of any kind, made use of said means, by reason whereof she died, such bare transmission of the means of procuring an abortion, and suggestion to use the same, constitutes "the infliction of an injury" within the purview of the statutes of this State.

3. For that his honor held that the transmission by the said James H. Morrow—he being at the time without the State—to the said Coley Fowler, being within the State, of the means of

doing an unlawful act, *is* the doing of such unlawful act by the said James H. Morrow, if the said Coley Fowler thereafter made use of said means to her hurt.

4. For that his honor held that the courts of South Carolina have jurisdiction to try the said James H. Morrow for the crime of abortion, notwithstanding that the evidence, beyond dispute, established that said *James H. Morrow committed no act in this State.*

5. For that his honor held, in substance, that an act (viz : the procuring and forwarding an *abortifacient,*) done by a person at the time without this State, and not criminal at the place where done, is a crime triable and punishable by the courts of this State, if such *abortifacient* be used in this State, by the person to whom sent, with fatal results.

6. For that his honor held, in substance, that an act (viz : the procuring and forwarding an *abortifacient,*) done by a person at the time without this State, and not criminal at the place where done, becomes a crime triable and punishable by the courts of this State, if such *abortifacient* be used by the person to whom sent in this State, without regard to whether any result is produced or not by such use.

7. For that his honor held, in substance, that if the said James H. Morrow procured an *abortifacient* at a place beyond the territorial limits of the State of South Carolina, and forwarded the same to the said Coley Fowler, she being then within the limits of said State; and the said Coley Fowler thereupon, of her own free will, used the said *abortifacient,* without being thereto compelled by any force, or duress, or threats used towards her, such act of said defendant, James H. Morrow, is a crime under the laws of this State, and can be tried and punished by the courts of South Carolina.

8. For that his honor held that a State statute creating an offence not known to the common law, is entitled to extra territorial respect.

9. For, that his honor held that a State statute creating an offence not known to the common law can be violated by a citizen of another jurisdiction, being, at the time of the alleged

violation, beyond the limits of the State wherein the said statute is of force.

10. For that his honor charged the jury that if they believed beyond a reasonable doubt that the defendant procured, or attempted or intended to procure, an abortion by *any of the means set out and prescribed in the act on that subject,* they must find a verdict of guilty on the first or second count, or generally, as the case might be; whereas he should have instructed the jury that the prosecution was limited in its evidence, and the jury in arriving at their verdict to the means (and the proof thereof) set forth in the indictment.

11. For that his honor overruled defendant's objection to the indictment made upon the ground that the acts complained of in the first count thereof were not therein stated to have been done "feloniously."

12. For that his honor admitted as evidence in reply certain letters purporting to have been written by the defendant.

*Messrs. Melton & Melton* and *McDonald, Douglass & Obear,* for appellant.

*Mr. Nelson,* solicitor, contra.

December 11, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The defendant in this case was indicted under the act of 1883 (18 Stat., 547), entitled "An act to amend the criminal law by providing for the punishment of abortion." The only portions of that act pertinent to the present appeal are sections 1 and 2. Section 1 reads as follows: "That any person who shall administer to any woman with child, or prescribe for any such woman, or suggest to, or advise or procure her to take any medicine, substance, drug or thing whatever, or who shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or procure the miscarriage, or abortion, or premature labor of any such woman, unless the same shall have been necessary to preserve her life or the life of such child, shall, in case the death of such child or of such

woman results, in whole or in part, therefrom, be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary for a term not more than twenty years nor less than five years." Section 2 is in the following language : "That any person who shall administer to any woman with child, or prescribe, or procure, or provide for any such woman, or advise or procure any such woman to take, any medicine, drug, substance or thing whatever, or shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or procure the miscarriage, or abortion, or premature labor of any such woman, shall, upon conviction thereof, be punished by imprisonment in the penitentiary for a term not more than five years," &c.

The indictment contained two counts—the first charging that the defendant "unlawfully did suggest, advise, induce, and procure one Colie Fowler, a single woman, then and there being pregnant with child, to take divers quantities of a certain pernicious and destructive substance, drug or medicine, in the form and shape of pills, with intent to cause or procure the abortion," &c., and proceeds to allege that by the use of said means the abortion was procured, and that the death of the said Colie Fowler was thereby caused. In the second count the charge is that the defendant "unlawfully did prescribe, procure, and advise one Colie Fowler, a single woman, then and there being pregnant with child, to take divers quantities of a certain pernicious and destructive substance, drug or medicine, in the form and shape of pills, with intent to cause or procure the abortion," &c.

The case came on for trial before his honor, Judge Wallace, and a jury, when there was much testimony taken, and in the opening argument of the counsel for the defence a plea to the jurisdiction of the court was interposed upon grounds which will hereinafter appear, and after argument thereon the plea to the jurisdiction was overruled, and the case was submitted to the jury under the charge of the judge, which should be incorporated in the report of this case, together with his reasons for overruling the plea. The jury having rendered a verdict

of guilty, and sentence having been passed upon the defendant, he appeals upon the several exceptions set out in the record, which need not be repeated here, but which should likewise appear in the report of the case. We propose to take up these exceptions in their inverse order.

The twelfth exception imputes error in admitting as evidence, in reply, certain letters purporting to have been written by the defendant. This is manifestly based upon a misconception, for nothing of the kind appears either in the printed "Case" or in the type-written copy of the testimony filed in this court. Indeed, as no allusion was made to this exception in the argument of counsel for appellant, we suppose it was abandoned, but whether abandoned or not, it certainly cannot be sustained, for the reason indicated.

The eleventh exception complains of error on the part of the Circuit Judge in overruling defendant's exception to the indictment, upon the ground that the acts charged in the first count are not charged to have been done "feloniously." Here, also, we are unable to find anything in the "Case" upon which this exception can be based. It does not appear that the Circuit Judge was ever called upon to make, or did make, any ruling upon the subject. Besides, no such exception could be heard unless taken before the jury were sworn (act of 1887, 19 Stat., 829), and there is nothing to show that the exception was taken at the proper time. Indeed, we presume from the fact that no allusion is made in the argument submitted here to this exception, that it is likewise abandoned, but whether this is so or not, the exception must be overruled.

The tenth exception is somewhat misleading, and for that reason this exception is reproduced precisely as we find it in the record, with the italics there found: "For that his honor charged the jury, that if they believed, beyond a reasonable doubt, that the defendant procured, or attempted or intended to procure, an abortion by *any of the means set out and prescribed in the act on that subject*, they must find a verdict of guilty on the first or second count, or generally, as the case might be; whereas he should have instructed the jury

that the prosecution was limited in its evidence, and the jury in arriving at their verdict, to the means (and the proof thereof) set forth in the indictment." The point of this exception, as we understand it, is, that inasmuch as the statute under which this defendant was indicted contemplates two distinct and different means by which abortion may be caused, viz : 1st, by the use of drugs, and 2d, by the use of instruments involving the application of force; and inasmuch as the indictment charges only the first, no evidence could properly be received tending to show the use of the second; and if received, the jury should have been instructed that they could not find the defendant guilty, if they believed that the abortion was caused, or attempted to be caused, by the use of instruments, involving some degree of force, and not by the use of drugs, as alleged in the indictment.

To make this point available to the defendant, there should have been some request so to instruct the jury, and a refusal to grant such request. But no such request and no such refusal is to be found in the "Case." The copy of the testimony with which we have been furnished, in addition to the printed "Case," shows that there was no testimony offered by the prosecution tending to show that the abortion was either caused or attempted by the use of any other means than those set forth in the indictment; and it is a well settled rule, that the correctness of a judge's charge must be tested by its application to the case as made by the pleadings and the evidence. The matter of the use of instruments involving some degree of force, was introduced into the case by the defendant in his cross-examination of the witnesses for the prosecution, and in the examination of the witnesses for the defence, for the purpose, doubtless, of showing that the abortion was caused, or, at least, was more likely to have been caused, by the use of instruments rather than by the use of the means set out in the indictment. It was a pure matter of defence, not embraced in the issue presented by the pleadings; and if the defendant desired that the jury should be instructed as to the effect of such defence, if made out by the evidence, his proper course was to present a request to that effect.

But, in addition to this, the exception does not correctly represent the judge's charge. He did not say to the jury what he is represented to have said in that portion of the exception which is italicized. He did not use the word *"any,"* which is the important word in the exception, necessary to raise the point upon which this exception is based. On the contrary, the judge, after setting out the first section of the act under which the first count in the indictment was framed, and stating what was the charge in that count, proceeded to say: "That is your first inquiry, whether or not this defendant did that. If he did, he is guilty under this act; if he did not, he is not guilty under this first section of the act." If he did what? Why, certainly, if he did what was charged in the first count of the indictment, viz: cause the abortion by the use of drugs. But the judge did not stop there, for he immediately proceeded to say: "If he did not, he is not guilty." Could language make it plainer to the jury, that unless the defendant did what was charged in the first count, he could not be found guilty, no matter what else he may have done? So that this analysis shows that the jury were practically instructed, so far, at least, as the first count was concerned, precisely in accordance with such a request as would have been the proper mode of raising the point. And as the jury found a general verdict of guilty, which, of course, embraced the first count, if there was no error, as there evidently was none, in the instruction as to the first count, it would make no practical difference to the defendant, even if there was error in the instruction as to the second count, which, however, we are not prepared to admit.

On examination of that portion of the charge which relates to the second count in the indictment, we find that the Circuit Judge, after setting out the second section of the act, and pointing out the difference between that and the first section, and declaring, in general terms, what would constitute a violation of section 2, he proceeds to say, that in order to convict the defendant under that section, "you will have to be satisfied, beyond a reasonable doubt, that he attempted to procure an abortion, intended to do it, by the means stated here in the section I have read to you." This language,

isolated from the context, would seem to afford some support
for the position contended for by the appellant; but when it is
taken in connection with the entire charge, as it must be, under
the well settled rule, it is apparent that it does not justify the
position of the appellant.    For in the very next paragraph we
find that the jury, after being told what were the issues which
they were to try, were instructed as follows : "If you are satis-
fied, beyond a reasonable doubt, that either or both of these
offences are made out, you will have to convict him according
to the degree of offence described in the act *and set forth in the
indictment*" (italics ours).    Again, the jury were told : "If you
are of opinion, and are satisfied of it beyond a reasonable
doubt, that he attempted to procure an abortion, intended to
do it, by the means set out here in this act, but that such means
did not accomplish his purpose, but that the abortion was pro-
cured by other means, to which he was not a party, then you
cannot convict him on the first count, but may on the second,
if you are satisfied beyond a reasonable doubt."    This followed
by the approval and adoption of the solicitor's first request to
charge, as set out in the charge, shows that the judge did not
intend to charge, and could not have been understood as charg-
ing, that the defendant could be convicted, without the means
of procuring the abortion, or attempting to procure it, being
such as were set out in the indictment.    Moreover, there was
not the slightest evidence tending to show that the defendant
either used or employed, or advised the use or employ-
ment, of any instrument involving force, to cause the
abortion; and as the well settled rule is that the charge
of a Circuit Judge must be understood as applying to the case
as made by the evidence, we can not consider the charge here
as open to the objection made by the tenth exception.

Again, even if the jury had believed that the abortion was,
in fact, caused by the use of instruments, involving the appli-
cation of some force, rather than by the drugs taken as
alleged in the indictment, and had at the same (time)
believed that the defendant had advised the use of such
drugs, with intent to bring about abortion, the jury should
still have rendered a verdict of guilty under the second count

of the indictment; for it is quite clear that the second section of the act does not require that, in order to constitute the offence there denounced, the means resorted to should prove effective to accomplish the purpose intended. The offence consists in the use of the means mentioned in the act, with the intent to cause abortion, and it is immaterial whether such means effected the purpose intended or not. We are of opinion, therefore, that the tenth exception cannot be sustained.

All of the remaining exceptions, in different forms, impute error to the Circuit Judge in overruling the plea to the jurisdiction; but as the second and seventh exceptions seem to imply that it was necessary, in order to constitute the offence charged, that some force or duress of some kind should have been used to induce Colie Fowler to use the means resorted to for the purpose of causing the abortion, we will first consider the point thus made. To dispose of this point, it is quite sufficient to say that the act under which the defendant was indicted plainly does not contemplate any ingredient of that kind in the offence there made punishable in the manner therein prescribed. There is not a word in either section of the act which signifies that the legislature intended that the use of force or duress in any form, was an element in the offence. On the contrary, the act plainly shows that no such element was contemplated as constituting any part of the offence. This is obvious from a mere reading of the act, and no argument can make it plainer. Indeed, this point was not mentioned in the argument.

The remaining exceptions may be considered together. The question which these exceptions present, is thus stated in the argument of counsel for appellant: "whether the Court of General Sessions for Richland County, S. C., had jurisdiction to try the defendant for his alleged violation of the statutes of this State, he having been, at the time of the commission of the only overt acts charged upon him, a citizen of, and actually in, another State." We do not think that this is a precisely accurate statement of the question as it is presented by the record in this case. For there was evidence tending to show that the defendant had had sexual inter-

course with this unfortunate girl, likely to result in pregnancy; that when she discovered her condition and communicated the same to defendant, that he then formed the intention of using means to cause an abortion; that the intention thus conceived was attempted to be carried out by applying to a physician to know whether the drug which he had procured to effect his purpose would be sufficient to effect his object; and that such drug was taken by the girl at his instance and by his advice. True, he attempted to disguise, what the jury, under the evidence, might well have regarded as his real purpose, by saying to the physician that he had a little lady friend who had missed her regular monthly period, and desired to know what would be the best thing to bring it on; but his remark to the doctor, that the girl was awfully scared about it, and would not have her condition known for anything in the world, coming, as it did, from a man who was in no wise related to the girl, and only temporarily resident in Columbia, would have well warranted the jury in concluding that the real object of the defendant was to obtain something that would cause abortion, and that he did procure a certain drug, which the girl used by his advice for the purpose of causing the abortion. All this occurred in the city of Columbia, in this State, and, therefore, it is not correct to say, as is said in the statement of the question, above quoted from the argument for the appellant, that he was at the time of the commission "of the *only* overt acts charged upon him, a citizen of, and actually in, another State." Under this view of the case there would be no ground for the plea to the jurisdiction, and this would be conclusive of this appeal, so far as the question of jurisdiction is concerned.

In deference, however, to the zeal and ability with which this appeal has been prosecuted, we will not decline to consider the question as it is formulated in the argument of counsel. For this purpose only we will, for the present, disregard the testimony above alluded to as to what occurred in Columbia, and consider the case as if the only "overt acts," as they are somewhat incorrectly termed, were committed in the city of Washington, District of Columbia, though we must

say it is somewhat difficult to separate the intention (which there was evidence tending to show was originally formed in Columbia) from the acts done in Washington in pursuance of such intention. Assuming, however, for the purposes of this discussion only, that there was no evidence of any act done in pursuance of an intention to effect an abortion, except such acts as were done by the defendant in the city of Washington, then if the acts there done were intended to take effect in this State, and did there actually take effect, we still think the court in this State had jurisdiction of the offence charged. The evidence leaves no doubt that, after the defendant left this State and returned to Washington, he procured from a druggist there certain drugs in the shape of pills, which he sent through the agency of the U. S. mail to Colie Fowler, with the advice to use them for the purpose of bringing about an abortion; that she received the pills so sent, and used them according to the advice given her by the defendant, and that the abortion did take place which resulted in the death of said Colie Fowler. Under this state of facts, the question is whether the courts of this State could take jurisdiction.

There can be no doubt that it is the duty of a State to protect, as far as practicable, the lives and persons of its citizens, and others temporarily resident therein, against unlawful violence or injury, whether the person committing such violence or inflicting such injury be a citizen of this State at the time or not. If such person go beyond the jurisdiction after committing the act, or be and remain beyond the limits of the State when the unlawful act is committed, it may be difficult and oftentimes impossible to obtain jurisdiction *of the person* of the party committing the act, which would be necessary to give jurisdiction; but jurisdiction of the person and jurisdiction of the subject matter are two entirely distinct and different things. And where, as in this case, the party charged voluntarily returns to this State, and thereby submits his person to the jurisdiction of the courts of this State, we see no reason why he may not be tried and punished for any violation of the personal rights of any of the citizens of this State entitled to the protection of its laws, even though the act by which such violation was caused

was originally put in motion beyond the limits of the State, provided the effect thereby intended reached the person for whom it was intended while in this State. If the defendant procured the pills in Washington, and transmitted them by mail to the said Colie Fowler, with the advice for them to be taken for the purpose of bringing about an abortion, and she received and took them in this State, in contemplation of law, it was the same thing as if the defendant in person had brought the pills to Columbia and there delivered them to Colie Fowler. For while it is quite true, as a general proposition, that the principal is not liable *criminaliter* for the unlawful act of his agent, yet if the act done by the agent is in pursuance of the authority of his principal—done by his authority—the principal is liable.

This doctrine has been expressly recognized and acted upon by the courts of this State, in the case of *State* v. *Anone,* 2 Nott & McC., 27, where the owner of a store or shop was convicted of trading with a slave, though the act of trading was done by a clerk in his employment, in the absence of the employer, the evidence being sufficient to show that such trading was authorized by the employer. The same doctrine was also fully recognized in the cases of *State* v. *Borgman,* 2 Nott & McC., 34, and *State* v. *Williams,* 3 Hill, 94; though in the last two cases the defendants escaped conviction solely on the ground that the evidence was insufficient to show that the employer had authorized or directed the clerk to do the unlawful act charged. Upon the same principle, it seems to us, that when the defendant procured the pills in Washington and put them in the mail to be delivered to Colie Fowler in Columbia, for the unlawful purpose charged, it was, in contemplation of law, the same thing as if he had there delivered the pills to the woman for whom they were intended in his own proper person. Instead of coming in person to Columbia to deliver the pills, he simply employed the agency of the mail to do the act which he desired to have done, and which was done by his express authority and direction, in this State.

So far as we are informed, there is no authority in this State as to the question of jurisdiction, but authorities elsewhere,

which, though not binding upon us, are entitled to the most
respectful consideration, have been cited to show error in over-
ruling the plea to the jurisdiction.   It seems to us that the
authorities thus cited do not support defendant's contention;
and, on the other hand, we find authorities elsewhere supporting
the views which we have taken, as will be presently shown. It
is conceded in the argument for appellant, and properly con-
ceded, as the authorities abundantly support the proposition,
that "if one sends an infernal machine from one State to an-
other, or shoots from one to another, and kills a human being,
or sends poison from one State to another, to be administered
to a person, and the result is the destruction of human life, such
offender may be tried in the State where the death happened;"
but the attempt is made by appellant's counsel to show that
this proposition of law applies only in cases where the offence
charged is an offence at common law, and does not apply in a
case like the present, which is a mere statutory offence.   It
would unnecessarily protract this opinion to consider whether
the crime of abortion was an offence at common law, or is a
mere creature of statute—a question which does not seem to be
very clearly settled by the authorities—and we will assume for
the present that abortion is a mere statutory offence, and pro-
ceed to consider whether the proposition above quoted from
appellant's argument is limited to offences at common law, and
does not apply to cases like the present, in which, as we have
assumed, the offence charged is of mere statutory origin.

Two cases have been cited to sustain the distinction sought
to be drawn by counsel for the appellant—*State* v. *Knight*, Tay-
lor N. C. Rep., 44, and *People* v. *Merrill*, 2 Park. Cr. Rep. (N.
Y.), 590.  An examination of Knight's case will show that the
facts are not fully reported, and the head note shows that the
only point there decided was that: "The legislature of this
State cannot define and punish crimes committed in another
State," a proposition which no one will dispute.  From reading
the case, it would appear that the defendant was indicted under
a North Carolina statute, which recites in its preamble that
there is reason to apprehend that evil-disposed persons, resi-
dent in the neighboring States, make a practice of counterfeit-

ing bills of credit of the State, and by themselves or emissaries utter or vend the same with an intention to defraud the citizens of this State, and proceeds to enact that all such persons shall be subject to the same modes of trial and, upon conviction, to the same punishment, as if the offence had been committed within the limits of the State. But the case does not show that the defendant was charged with uttering or vending such counterfeit bills, either in person or by his emissaries, *within the limits of the State of North Carolina.* On the contrary, it may be inferred that the charge was for uttering or vending such counterfeit bills outside of the limits of the State, for the manifest object of the statute was to protect the credit of the State, and there is not a word in it that seems to contemplate that in order to constitute the offence denounced, the circulation of such bills must be within the State. We are unable, therefore, to see what application the case has to the case now under consideration.

In Merrill's case, the defendant was indicted for a violation of a statute, declaring that any person who shall sell a person of color, who shall have been forcibly taken, inveigled or kidnapped from the State of New York, shall, upon conviction, be punished as therein prescribed. It appeared that the defendant had inveigled a person of color from the State of New York to the city of Washington and there sold him, and it was held that the courts of New York had no jurisdiction, because the offence charged was committed beyond the limits of the State of New York. It will be observed that the gist of the offence charged was *the sale* of the person falling within the class described in the statute, and as that took place beyond the limits of the State of New York, it, of course, followed that the court of New York had no jurisdiction. The inveigling was no part of the offence charged in the count upon which the case turned, but was nothing more than one of the elements in the description of the person whose sale was forbidden by the section under which that count of the indictment was framed; and there was another section in the same statute which made it a distinct offence to inveigle a person of color from the State with intent to sell him, under which the court said the courts of New

York would have jurisdiction. We do not see, therefore, how appellant can derive any support from Merrill's case.

It seems to us that all of the cases cited by appellant's counsel to sustain the point now under consideration decide nothing more than the broad proposition, which no one will dispute, that the courts of one State cannot take jurisdiction of offences *committed* in another State; but the question here is whether the offence was, in the eye of the law, committed within the limits of this State. It seems to us that the authorities which we will now cite sustain the view which we have taken, in a previous part of this opinion, that in the eye of the law the offence charged was really committed here, although the defendant Morrow was in the city of Washington, when, through an innocent agent, the U. S. mail, he transmitted the drugs to Colie Fowler while in this State, with intent to cause the abortion charged, and which, by his advice, were used by her here.

In 1 Bish. Crim. Law, sec. 110, that eminent author says: "The general proposition, therefore, is, that no man is to suffer criminally for what he does out of the territorial limits of the country. Yet one who is personally out of the country may put in motion a force which takes effect in it; and in such a case he is answerable where the evil is done, though his presence is elsewhere. Thus, if a man, standing beyond the outer line of our territory, by discharging a ball over the line, kills another within it, or, himself being abroad, circulates through an agent libels here, or in like manner obtains goods by false pretenses, or does any other crime in our own locality against our laws, he is punishable, though absent, the same as if he were present." Counsel for appellant questions this proposition, or rather the illustration given, so far as it implies by the language, "or does any other crime in our own locality against our laws," that the proposition is applicable to *statutory* as well as common law offences; and has undertaken to show that all the authorities cited by the author to sustain the text are either civil cases or cases charging common law offences, except the case of *Barkhamsted* v. *Parsons*, 3 Conn., 1, which was a *qui tam* action. Conceding this to be true, we do not see how this can

help the appellant, unless some authority can be found which recognizes the distinction sought to be drawn between statutory and common law offences in this respect; and we do not find any such authority, nor are we able to perceive any sufficient reason, for any such distinction. The mere fact that the cases cited by Mr. Bishop to sustain the legal principles which he lays down, happen to be cases of the character claimed by appellant, cannot affect the legal principle, which is substantially this: that a person may commit an offence within this State by putting in motion a force which takes effect here, or by acting through innocent agents here, although the party charged may never have been personally present in this State. To the same effect, see 1 Whart. Cr. Law, §§ 278 and 604. These distinguished text-writers are sustained by numerous cases, some of which we will cite.

In *People* v. *Adams*, 3 Denio, 190, affirmed by the Court of Appeals in 1 N. Y. (Comst.), 173, the indictment substantially charged the defendant with obtaining money under false pretences, in violation of a statute of the State of New York. The allegation, in substance, was that the defendant, by exhibiting a receipt, purporting to be signed by a forwarding agent in Ohio, for certain produce to be forwarded to certain commission merchants in the city of New York, to such merchants, induced them to accept drafts drawn on them by defendant against such produce, which the commission merchants afterwards had to pay out of their own funds, the receipt exhibited being false and fraudulent. The defendant filed a plea to the jurisdiction, alleging that he was a citizen of Ohio, and resident in that State at the time of the transaction referred to, and never had been in the State of New York. To this plea a demurrer was interposed, and was sustained; the court holding the offence of obtaining money by false pretenses is committed where the false pretenses are successfully used and where the money is obtained, and that the defendant, though absent from the State of New York when the money was obtained by him through innocent agents in that State, employed by defendant, the offence charged was, in the eye of the law, committed by defendant in the State of New York, through his innocent agents, although

he was absent from the State at the time, and hence the plea to the jurisdiction could not be sustained.   This case was elaborately and ably argued by very distinguished counsel, and their arguments, which are fully reported in 3 Denio, present a full review of the authorities.

The same doctrine is recognized in *Regina* v. *Garrett*, 22 Eng. Law & Eq., 611, where Lord Campbell, then chief justice, said : "A person abroad may, by the employment as well of a conscious as of an unconscious agent, render himself amenable to the law of England when he comes within the jurisdiction of our courts."   In *State* v. *Chapin*, 17 Ark., at page 565-6, it is said : "It is not necessary in all cases that a man should be actually present in this State to make him amenable to our laws for a crime committed here.   If the crime is the immediate result of his act, he may be made to answer for it in our courts, though actually absent from the State at the time he does the act, because he is constructively present, or present in contemplation of law."   And again : "If a person absent from this State commits a crime here, through or by means of an innocent instrument or agent, it seems that the law would regard him as personally present, and hold him responsible for the offence."   This case, as well as the case of *People* v. *Adams, supra*, recognize the distinction between a case where a person abroad does an act here through a *guilty* agent, and where the same act is done through an *innocent* agent, or some inanimate agency ; for, in the former case, where the act is a felony, the guilty agent must be regarded as the principal felon, and the person abroad who employs him should be regarded as an accessory before the fact, and only punishable where he actually is at the time he incites his guilty agent to do the act here. Hence the cases cited by appellant to sustain such a distinction are not applicable to this case, as there is no pretense that the agency employed by the defendant, Morrow, to transmit the drugs from Washington to Colie Fowler in Columbia, was a *guilty* agent.   To sustain the general doctrine which we have announced, that a person abroad may commit a crime here through the agency of innocent persons here, or inanimate

instruments, see *Rex* v. *Brisac,* 4 East, 164; *Noyes* v. *State,* 41 N. J., 418; *The People* v. *Rathbun,* 21 Wend., at page 534.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.