15965

STATE v. KING *ET AL.*

(43 S. E. (2d) 596)

*Messrs. Hart & Moss,* and *John M. Spratt,* all of York, for Appellant,

*Messrs. W. G. Finley,* Solicitor, and *R. B. Hildebrand,* of York, for Respondent,

July 7, 1947.

TAYLOR, Justice: The defendants L. A. King and J. J. King were jointly tried at the July term of Court of General Sessions for York County upon the following Bill of Indictment:

"The State of South Carolina,

"County of York.

"At a Court of General Sessions, begun and holden in and for the County of York in the State of South Carolina, at York Court House, in the County and State aforesaid, on the third Monday of November in the year of our Lord, one thousand nine hundred and forty-five.

"The Jurors of and for the County aforesaid, in the State aforesaid, upon their oath, Present:

"That L. A. King and J. J. King late of the County and State aforesaid, on or about the 15th day of August in the year of our Lord one thousand nine hundred and forty-one and on divers other dates before the bringing of this Bill of Indictment with force and arms, at York in the County and State aforesaid, did exhibit and show to T. D. Williamson a certain tract of land located in Bethel Township, York County, South Carolina, containing fifty (50) acres, more or

less, known as the old Cook place, and did represent to the said T. D. Williamson and Mary K. Williamson that he and J. J. King were the owners of the same, and did contract and sell the said fifty (50) acres of land to the said T. D. Williamson and wife, Mary K. Williamson, at and for a purchase price of Nine Hundred Twenty five and no/100 Dollars ($925.00), and that thereafter the said L. A. King did on the 22nd day of August, 1941, prepare and did execute, and have eecuted a certain written contract and agreement of sale between L. A. King and J. J. King, as sellers, and T. D. Williamson and Mary King Williamson, as purchasers, setting out the terms of the sale therebefore agreed upon and made, to wit: that the purchase price of the property was to be Nine Hundred Twenty-five and no/100 Dollars ($925.00)—Two Hundred Twenty-five and no-/100 Dollars ($225.00) cash; Two Hundred and no/100 Dollars ($200.00) to be traded out in groceries by the sellers and balance to be paid in three (3) equal notes of One Hundred Forty-four and no/100 Dollars ($144.00), one due each year and one note of Sixty-eight and no/100 Dollars ($68.00), and that upon compliance with the terms and conditions the sellers would execute and deliver to the buyers an indefeasible fee-simple title to the said land with full covenants and warranties. That the purchasers, T. D. Williamson and wife, Mary K. Williamson, did pay the Two Hundred Twenty-five and no/100 Dollars ($225.00) cash, and did on August 22, 1941, execute and deliver three (3) notes for One Hundred Forty-four and no/100 Dollars ($144.00) each due one, two and three years from date, or on August 22, 1942, August 22, 1943, and August 22, 1944, and a fourth note for Sixty-eight and no/100 Dollars ($68.00) due August 22, 1945. That the said purchasers did furnish the Two Hundred and no/100 Dollars ($200.00) worth of groceries to L. A. King and did pay the three (3) notes for One Hundred Forty-four and no/100 Dollars ($144.00) on or before the same were due, some of the said money, to wit: Ninety and no/100

Dollars ($90.00) being actually paid in York County, South Carolina, on July 31, 1942, and did offer to pay the final note of Sixty-eight and no/100 Dollars ($68.00) before the same was due, but the said L. A. King refused to accept the payment of same, and did refuse to make a deed of conveyance for the said land, and was in truth and in fact not in a position to make a deed, because the title to the land was in the Bank of Clover of Clover, South Carolina, and that the said Bank of Clover had already conveyed the land to a third party.

"That the said L. A. King and J. J. King did by these cunning, swindling acts and devices and confidence game, overreach, cheat and defraud the said T. D. Williamson and Mary K. Williamson, both ignorant of law and unwary, and who were deluded by the swindling practices and devices of the said L. A. King and J. J. King of the sum and value of Six Hundred Fifty-seven and no/100 Dollars ($657.00), lawful money of the United States and groceries of the value of Two Hundred and no/100 Dollars ($200.00), or a total of Eight Hundred and Fifty-seven and no/100 Dollars ($857.00), against the form of the Statute in such cases made and provided and against the peace and dignity of the State.

"And the jurors aforesaid, upon their oath aforesaid, do further Present, That L. A. King and J. J. King late of the County and State aforesaid, on or about the 9th day of November in the year of our Lord one thousand nine hundred and Forty-one and on divers other days before the date of this indictment, with force and arms at York in the County and State aforesaid, did represent to T. D. Williamson that J. J. King, was the owner of a certain tract of land located in Bethel Township, York County, South Carolina, containing eighteen and 3/10 (18.3) acres, and that he would sell the said land to T. D. Williamson and wife, Mary K. Williamson, for the sum of Five Hundred Sixty-six and no/100 Dollars ($566.00), payable Two Hundred and no/100 Dollars ($200.00) cash; Sixty-six and no/100 Dol-

lars ($66.00) to be traded out in groceries, one note for One Hundred and no/100 Dollars ($100.00), with five per cent (5%) interest due November 12, 1941, and one note for Two Hundred and no/100 Dollars ($200.00) with five per cent (5%) interest payable November 12, 1942, and that upon payment of said purchase price the seller would execute and deliver a deed conveying 'an indefeasible fee-simple title to the said land'.

"That thereafter on November 12, 1941, a contract and sales agreement setting forth the terms was entered into; that the Two Hundred and no/100 Dollars ($200.00) cash was paid, the notes executed, and thereafter the Sixty-six and no/100 Dollars ($66.00) in groceries was delivered and the notes for One Hundred and no/100 Dollars ($100-.00) and Two Hundred and no/100 Dollars ($200.00) were paid in full on or before they were due, and that on paying the full purchase price in full the said Mary K. Williamson (T. D. Williamson at that time being a sailor on duty in the Pacific Ocean) demanded that a deed be delivered, but the said L. A. King and J. J. King refused to deliver such deed, although the purchase price had been paid in full.

"That in truth and in fact the said land was owned by the Bank of Clover of Clover, South Carolina, and that the only interest the said J. J. King or L. A. King had in the same was an assigned option which they had not kept in force according to the terms thereof, and that the said L. A. King and J. J. King had not paid the sum of money received from T. D. Williamson and Mary K. Williamson to the said Bank, but had appropriated them to their own use, and that the Bank of Clover sold the property to a third party.

"That the said L. A. King and J. J. King did by these cunning, swindling acts and devices and confidence game, overreach, cheat and defraud the said T. D. Williamson and Mary K. Williamson, both ignorant of law and unwary, and who were deluded by the swindling practices and devices

of the said L. A. King and J. J. King of the sum and value of Five Hundred Ninety-one and no/100 ($591.00), against the form of the Statute in such cases made and provided, and against the peace and dignity of the State.

"W. G. Finley,
"Solicitor."

At the close of all the testimony, the Court, upon motion of defendants' counsel, directed a verdict of "not guilty" as to J. J. King. At the close of the State's testimony, the defendants moved for a directed verdict of "not guilty" upon the following grounds: (1) That the Court was without jurisdiction to try any possible offense charged in the indictment; (2) that the evidence was not sufficient to prove any offense of swindling; (3) that in order for an offense of swindling to be indictable, it must be that which affects the public generally; (4) that if there was any overreaching of the prosecuting witness, such was not criminal and not such that can be redressed in the criminal courts by punishment but by damages to the parties injured in a proper action; (5) that if the State based its indictment upon the proposition stated, of a second sale of property, then there was a fatal variance between the indictment and proof; all of which were overruled and the case was submitted to the jury which returned a verdict of "guilty" as to L. A. King.

The defense made timely motions for a new trial, for arrest of judgment and also for a directed verdict notwithstanding the verdict of the jury, all of which were overruled, and the defendant L. A. King was sentenced to pay a fine of One Thousand ($1,000.00) Dollars and to refund to T. D. Williamson and Mary K. Williamson jointly the sum of Twenty-two Hundred Fifty and 50/100 ($2,200.50) Dollars; and in the event of failure to pay said fine or to make the refund of the amount ordered, then the said defendant to be confined in York County jail for a period of six (6) months. The defendant now appeals to this Court upon exceptions which raise the following questions:

1. Under the evidence produced at the trial of this case, did the Court of General Sessions of York County, South Carolina, have jurisdiction of the offense of swindling charged in the indictment?

2. Was the evidence adduced upon the trial of this case sufficient to prove the offense of swindling as is defined in Section 1746, 1942 Code of Laws of South Carolina, this being the Section of the Code upon which the indictment is based?

3. The state having taken the position at the trial that there was a second sale of the property in question and that such sale was a violation of Section 1746 of the Code, was there a fatal variance between the proof and the allegations of the indictment?

4. The charge in the indictment being one growing out of a private contract between the prosecuting witnesses and the defendant, which contract and the actions of the parties relating thereto did not affect the public generally, does this furnish a basis for an indictment for swindling within the purview of the Statute?

The facts adduced from the record are briefly that the Bank of Clover, South Carolina, owned a farm located in York County, South Carolina, which it contracted to sell to one Tom Phillips, who by and with the consent of the Bank of Clover transferred his interests to J. J. and L. A. King of Charlotte, North Carolina. As a result of a newspaper advertisement by L. A. King and J. J. King. T. D. Williamson and his wife, Mary Williamson, contacted the Kings in Charlotte, North Carolina, and evidenced interest in the property, whereupon T. D. Williamson, in company of L. A. King, viewed the land in question. Subsequently, upon their return to Charlotte, North Carolina, the Williamsons entered into two (2) contracts with the Kings, the property being divided into two (2) tracts. The first tract of approximately fifty-two (52) acres provided for the total purchase price of Nine Hundred Twenty-five ($925.00)

Dollars—Two Hundred Twenty-five ($225.00) Dollars upon the signing of the contract, Two Hundred ($200.00) Dollars to be traded out in groceries by the seller, balance in three (3) equal notes of One Hundred Forty-four ($144-.00) Dollars each and one note of Sixty-eight ($68.00) Dollars; the first note of One Hundred Forty-four ($144-.00) Dollars to be due and payable one year, the second two years, and the third three years from date of the contracts. For the remaining acreage, a total purchase price of Five Hundred Sixty-six ($566.00) Dollars was to be paid Two Hundred ($200.00) Dollars at the time of execution of the contract, Sixty-six ($66.00) Dollars to be traded in groceries by the seller, one note for One Hundred ($100.00) Dollars payable one year from date and one note for Two Hundred ($200.00) Dollars payable one year from date. All notes except the one for Sixty-eight ($68.00) Dollars were paid in Mecklenburg County, North Carolina, and the groceries referred to in said contracts were delivered in Mecklenburg County, North Carolina. The Sixty-eight ($68.00) Dollar note was never paid, but the amount was tendered to Mr. L. A. King who refused to accept it.

In the early part of 1942, Mr. Williamson made application to the Bank of Clover for permission to cut the timber on the farm, as a result of which an agreement was entered into and Ninety ($90.00) Dollars was paid to the Bank of Clover by T. D. Williamson in its place of business in Clover, South Carolina, in compliance with this agreement, and Mr. Williamson received credit on the purchase price for this payment.

On February 8, 1943, the Bank of Clover wrote Mr. L. A. King stating that it had been informed that Mr. Williamson had given up the place, sold everything he had and said he was leaving. This letter further advised Mr. King that since the terms of the contract had already been violated (in that Mr. Williamson had sold the timber instead of using it repairing buildings on the place, and payments being in arrears), the Bank would feel free to make other

arrangements but wished to be fair with him and wanted an expression from him as to what his plans were with reference to the farm. Following these negotiations, the Bank of Clover on December 1, 1944, upon written authorization of L. A. King, executed its deed to C. C. Thomas, Jr., conveying this farm property.

At the November, 1945, term of Court of General Sessions for York County, the Kings were charged with violation of Section 1746 of the South Carolina Code for 1942 as found in the indictment heretofore reproduced, a close study of which shows that the State claims jurisdiction (1) by reason of the viewing of the premises which were located in South Carolina, and (2) the paying of Ninety ($90.00) Dollars which was paid to the Bank of Clover in its place of business in Clover, South Carolina; as all contracts, payments, delivery of groceries and other parts of this transaction were made and consummated within the State of North Carolina (evidence as to a letter by the defendant to the Bank authorizing it to sell to C. C. Thomas, was relied on by the State to prove a double sale, but such is not charged in the indictment).

Section 1746 of the South Carolina Code for 1942 reads as follows:

"Swindling.—Whoever shall inveigle or entice, by any arts or devices, any person to play at cards, dice, or any other game, or bear a share or part in the stakes, wagers, or adventures, or bet on the sides or hands of such as do or shall play as aforesaid, or shall sell, barter, or expose to sale any kind of property which has been before sold, bartered, or exchanged by the person so selling, bartering, or exchanging, or by any one for the benefit or advantage of the person so selling, bartering, or exchanging, in any house or other place within this State, or shall be a party thereto, or shall overreach, cheat, or defraud by any other cunning, swindling arts and devices, so that the ignorant and unwary, who are deluded thereby, lose their money or other prop-

erty, every such person exercising such infamous practices shall, on conviction thereof in any court of competent jurisdiction, be deemed guilty of a misdemeanor, and shall be fined at the discretion of the court, and, besides, shall refund to the party aggrieved double the sum he was so defrauded of; and if the same be not immediately paid, with costs, every such person shall be committed to the common jail or house of correction, if there be any, of the county where such person shall be convicted, there to continue for any time not exceeding six months, unless such fine, with costs, be sooner paid and discharged".

This case was prosecuted on the theory of a double sale, but the indictment does not so charge; instead it charged that L. A. King refused to accept the final payment "and did refuse to make a deed of conveyance for the said land, and was in truth and in fact not in a position to make a deed, because the title to the land was in the Bank of Clover, Clover, South Carolina; and that the said Bank of Clover had already conveyed the land to a third party", in other words, the selling of land which he did not own. And the only evidence in the record to support the allegations of the indictment as to jurisdiction is to the effect that the land was viewed in York County and that Ninety ($90-.00) Dollars was paid to the Bank of Clover, Clover, South Carolina, within York County. But the evidence further shows that the Ninety ($90.00) Dollar payment was paid by Mr. Williamson to the Bank as a consideration for being allowed to cut the timber on the place and it is undisputed that he received credit by the Bank of Clover upon the purchase price for this payment. All parties to the contract were residents of North Carolina at the time. The contracts were signed in North Carolina, the groceries delivered in North Carolina and all payments were made in North Carolina except the Ninety ($90.00) Dollars which has heretofore been discussed.

The State is therefore forced to rely upon the act of reviewing the premises prior to the signing of the contracts as the overt act giving it jurisdiction, but

at that time the contract of sale between the Bank of Clover and the defendant was in full force and effect and remained so for sometime thereafter. Thereafter, the act of viewing the property cannot be said to be an overt act such as to give the State of South Carolina jurisdiction. *See State v. McAdams,* 167 S. C. 405, 166 S. E. 405.

For the foregoing reasons, this Court is of the opinion that the Court of General Sessions of York County was without jurisdiction and the exceptions posing this question must be sustained. The other exceptions are thereby rendered academic as the judgment is hereby reversed and the sentence set aside.

Judgment reversed.

BAKER, C.J., and FISHBURNE, STUKES, and OXNER, J.J., concur.