581 S.E.2d 171

The STATE, Respondent,

v.

Dana DUDLEY, Appellant.

No. 3641.

Court of Appeals of South Carolina.

Heard March 19, 2003.

Decided May 14, 2003.

---

6. Because we reverse on this issue, we do not address Smashum's other issues on appeal.

516

Assistant Appellate Defender Aileen P. Clare, of SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Harold M. Coombs, Jr., of Columbia; and Solicitor Druanne Dykes White, of Anderson, for Respondent.

CONNOR, J.:

Dana Dudley appeals her convictions for trafficking in cocaine and conspiracy to traffic cocaine. Dudley, a Georgia resident, raises two issues on appeal: (1) whether South Carolina had jurisdiction to prosecute her because any alleged criminal conduct took place outside the state; and (2) whether the trial judge erred in failing to direct a verdict of not guilty on the charge of conspiracy to traffic cocaine because there was no evidence she agreed to violate South Carolina law. We vacate her convictions.

Originally, a three-judge panel of this Court heard this case. In a divided opinion, the panel affirmed Dudley's conviction and sentence for trafficking in cocaine, and reversed her conviction for conspiracy to traffic cocaine. *State v. Dudley*, Op. No. 3579 (S.C. Ct.App. filed Dec. 9, 2002) (Shearouse Adv. Sh. No. 41 at 57). Pursuant to section 14–8–90(a)(2) of the South Carolina Code of Laws, the full Court voted to rehear the case *en banc*. S.C.Code Ann. § 14–8–90(a)(2) (Supp.2002) ("The Court may sit *en banc* to hear cases upon ... its own motion agreed to by six judges of the Court."). Section 14–8–90(b) requires six votes for a reversal of the judgment below. S.C.Code Ann. § 14–8–90(b) (Supp.2002). On rehearing, six judges voted to vacate both of Dudley's convictions. Accordingly, the original panel opinion is hereby withdrawn, and the opinions of this Court are substituted.

## FACTS

Earl Hale and Donald Stokes, admitted drug dealers, both resided in Roanoke, Virginia. Because Stokes and Hale were having some "dry spells" in Roanoke, they decided to go to Atlanta to make a "dope run." Dana Dudley, a resident of Atlanta, Georgia, was a long-time friend of Stokes. On numerous occasions, Stokes spoke with Dudley by telephone. Some time in the early part of September of 1997, Stokes called Dudley from Roanoke and told her that he was planning a trip to Atlanta and he would contact her when he arrived. On September 9, 1997, Stokes and Hale drove from Roanoke to Atlanta. Upon arriving, Stokes and Hale went to a nightclub and then returned to their hotel. The next morning, September 10th, Stokes called Dudley and asked her to come to his hotel room. Stokes asked Dudley if she could get them cocaine. Dudley took money from Stokes and Hale and left to purchase the cocaine. Within thirty to forty-five minutes, Dudley returned with the cocaine.

After purchasing the cocaine, Hale and Stokes proceeded to drive home to Roanoke via Interstate 85 north toward Virginia. Hale and Stokes intended to sell the cocaine in Virginia. As they were driving through Anderson County, Deputy Matthew Durham, employed with the Anderson County Sheriff's Department, signaled for them to stop after noticing Hale was weaving and making an improper lane change. Deputy Durham gave Hale a warning and asked whether he could search the vehicle. After Hale consented, Deputy Durham searched the vehicle and found the cocaine. At that point, Stokes attempted to flee while Hale was being arrested by Deputy James Littleton, Deputy Durham's partner. While Deputy Durham chased Stokes, Hale broke free in an attempt to retrieve the cocaine and dispose of it. Ultimately, the deputies apprehended Stokes and Hale.

After their arrest, Stokes and Hale identified Dudley as the person from whom they had purchased the cocaine. As part of a deal, Stokes and Hale agreed to assist the Drug Enforcement Agency in prosecuting narcotics cases in South Carolina and Virginia. Through a series of recorded telephone conversations, Stokes set up a controlled buy with Dudley. Dudley refused to meet Stokes in South Carolina, but agreed to meet

him in Atlanta. Although Stokes met with Dudley just outside of Atlanta on September 15th, the purchase was not successful. Dudley, however, was arrested at this time for the prior transaction when Stokes and Hale were stopped in Anderson on September 10th.

An Anderson County grand jury indicted Dudley for trafficking in cocaine in an amount greater than 200 grams and less than 400 grams, and conspiracy to traffic cocaine.[1] A jury convicted Dudley of both charges. The trial judge sentenced her to twenty-five years imprisonment and payment of a $6,000 fine on both charges. The sentences were to be served concurrently. Dudley appeals.

## DISCUSSION

### I.

In her appeal, Dudley raises two distinct issues. First, Dudley argues South Carolina lacked jurisdiction to prosecute her for trafficking in cocaine given she is a Georgia resident who never entered Anderson County and never intended to commit any criminal act in South Carolina. Secondly, Dudley contends the trial judge erred in failing to direct a verdict of not guilty as to the charge of conspiracy because there was no evidence she agreed to violate South Carolina law.

In its analysis of these issues, the original panel thoroughly discussed several jurisdictional concepts. Specifically, all members of the panel found: (1) the circuit court was vested with subject matter jurisdiction by means of a valid indictment; and (2) Dudley consented to the circuit court's exercise of personal jurisdiction because she appeared at trial, defended her case, and failed to raise any objection. Because Dudley

---

1. The indictment for trafficking in cocaine provided:
 That Dana Dudley, AKA Dana Wilson did in Anderson County, South Carolina on or about September 10, 1997 traffic in cocaine by aiding and abetting the bringing into this State of South Carolina 200 or more grams of cocaine.
 The indictment charging Dudley with conspiracy to traffic cocaine stated:
 That Dana Dudley, AKA Dana Wilson did in Anderson County, South Carolina on or about September 10, 1997 to September 15, 1997 conspire with another to knowingly traffic in excess of 200 grams of cocaine.

was a Georgia resident and never entered the State of South Carolina in conjunction with the two offenses for which she was charged, the panel concluded its jurisdictional analysis with a discussion of this State's exercise of extraterritorial jurisdiction over acts committed by Dudley outside the state.

Although neither Dudley nor the State specifically raised or argued extraterritorial jurisdiction,[2] the original panel implicitly recognized that extraterritorial jurisdiction is a theory under the general concept of subject matter jurisdiction. *See Weinhauer v. State*, 334 S.C. 327, 513 S.E.2d 840 (1999) (stating issues involving subject matter jurisdiction may be raised at anytime, including for the first time on appeal); *State v. Brown*, 351 S.C. 522, 570 S.E.2d 559 (Ct.App.2002) (stating issues related to subject matter jurisdiction can be raised at anytime, can be raised for the first time on appeal, and can be raised *sua sponte* by the Court).

During the rehearing *en banc*, the question arose concerning whether extraterritorial jurisdiction is actually a component of subject matter jurisdiction or whether it is more properly considered part of personal jurisdiction. This question is significant in several respects. If extraterritorial jurisdiction is a component of subject matter jurisdiction, this Court is required to address it in this case despite Dudley's failure to specifically argue it at trial or on appeal. If, on the other hand, extraterritorial jurisdiction is classified as part of personal jurisdiction, then this Court would be precluded from addressing this issue, given Dudley waived any challenge to personal jurisdiction. *See Bakala v. Bakala*, 352 S.C. 612, 629 576 S.E.2d 156, 165 (2003) ("Objections to personal jurisdiction, unlike subject matter jurisdiction, are waived unless raised."); *State v. Douglas*, 245 S.C. 83, 138 S.E.2d 845 (1964) (holding a defendant may waive any objection to personal jurisdiction by failing to object and going to trial on the merits).

---

2. Other than a reference in her closing argument, Dudley never raised any jurisdictional challenge to the circuit court. On appeal, Dudley only challenged the lack of subject matter jurisdiction with respect to the charge of trafficking in cocaine. In contrast, the State argued there was no jurisdictional issue before this Court. The State characterized Dudley's appeal as a question of personal jurisdiction, which Dudley waived by failing to raise this issue at trial.

To answer this question, we must analyze the general concept of jurisdiction and distinguish between the component parts of subject matter jurisdiction and personal jurisdiction.

## A.

"[J]urisdiction of the offense charged and of the person of the accused is indispensable to a valid conviction." *State v. Langford*, 223 S.C. 20, 26, 73 S.E.2d 854, 857 (1953). Our Supreme Court has distinguished the types of jurisdiction as follows:

Jurisdiction is of two distinct kinds: (1) Jurisdiction of the subject or subject matter, and (2) jurisdiction of the person. In determining questions relating to each, different rules apply. Jurisdiction of the subject matter cannot be waived by any act or admission of the parties; but a party may confer jurisdiction over his person by consent, or may waive the right to raise the question.

*Douglas*, 245 S.C. at 87, 138 S.E.2d at 847. The Court has explained the theoretical underpinnings of subject matter jurisdiction as follows:

[T]he question of [subject matter] jurisdiction cannot be waived by any act or admission of the parties, for the very obvious reason that the parties have no power to invest any tribunal with jurisdiction of a subject over which the law has not conferred jurisdiction upon such tribunal. Hence the common expression, 'Consent cannot confer jurisdiction.'

*Langford*, 223 S.C. at 27, 73 S.E.2d at 857 (quoting *City of Florence v. Berry*, 61 S.C. 237, 240, 39 S.E. 389, 390 (1901)). "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *Pierce v. State*, 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000).

A circuit court has subject matter jurisdiction over a criminal offense if: (1) there has been an indictment that sufficiently states the offense; (2) there has been a waiver of indictment; or (3) the charge is a lesser-included offense of the crime charged in the indictment. *Carter v. State*, 329 S.C. 355, 495 S.E.2d 773 (1998). An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the

defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. *State v. Owens,* 293 S.C. 161, 359 S.E.2d 275 (1987); S.C.Code Ann. § 17–19–20 (2003) ("Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided.").

The rule for personal jurisdiction, however, is very different. Our Supreme Court has stated:

> The party may, by consent, confer jurisdiction *over his person,* or may waive the right to raise the question, whether the proper steps prescribed by law for obtaining such jurisdiction have been taken, as is illustrated by the familiar instance of a party who, though not served with a summons, appears and answers, and is thereby precluded from afterwards raising the question as to whether the court had acquired jurisdiction of his person.

*Langford,* 223 S.C. at 27, 73 S.E.2d at 857 (quoting *City of Florence v. Berry,* 61 S.C. 237, 240, 39 S.E. 389, 390 (1901)).

"Generally, jurisdiction of the subject matter is satisfied when appropriate charges are filed in a competent court, while jurisdiction of the person is acquired when the party charged is arrested or voluntarily appears in court and submits himself to its jurisdiction." *Douglas,* 245 S.C. at 87, 138 S.E.2d at 847.

Applying these concepts to the instant case, South Carolina was vested with personal jurisdiction because Dudley appeared at trial and defended her case on the merits. With respect to subject matter jurisdiction, Dudley never challenged the validity of her indictments. The indictments are valid in that they sufficiently state the elements of the charged offenses. Thus, South Carolina was vested with subject matter jurisdiction to the extent provided by a valid indictment.

Even though these jurisdictional requirements are satisfied, the facts of this case require an additional level of jurisdictional analysis. Without question South Carolina has jurisdiction to prosecute crimes that occur within its borders. *See* S.C. Const. art. I, § 11 ("No person may be held to answer for any crime the jurisdiction over which is not within the magistrate's court, unless on a presentment or indictment of a grand jury of the county where the crime has been committed. . . ."); S.C.Code Ann. § 1–1–10 (Supp.2002) ("The sovereignty and jurisdiction of this State extends to all places within its bounds. . . ."). Dudley's alleged criminal conduct, however, occurred entirely in Georgia. Therefore, we must determine whether South Carolina was vested with jurisdiction over these offenses.

## B.

"[J]urisdictional limits are tied to the territorial reach of the particular government's power." 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.1(a), at 458 (2d ed.1999). More specifically, "[s]ubject matter jurisdiction is limited by the territorial reach of the courts." *Rios v. State,* 733 P.2d 242, 245 (Wyo.1987). Common law has established "a territorial principle as the jurisdictional foundation for the reach of state laws. Under that principle, states have power to make conduct a crime only if that conduct takes place, or its results occur, within the state's territorial borders." 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.1(a), at 459 (2d ed.1999). "Conversely, there can be no territorial jurisdiction where conduct and its results both occur outside the state's territory." 4 *id.* § 16.4(c), at 572; *see State v. Smith,* 421 N.W.2d 315, 318 (Minn.1988) ("[C]riminal jurisdiction has been premised on the concept of territorialism. Jurisdiction depends on where the crime was committed.").

The Supreme Court of North Carolina explained this theory as follows:

Under this theory, a state's jurisdiction over criminal matters cannot extend beyond its territorial boundaries. Under the historical strict territorial principle, a state court had jurisdiction only over those crimes which occurred entirely within that state's boundaries; if any essential element

occurred in another state, neither possessed jurisdiction over the criminal offense. Under this view of jurisdiction, only one state could have jurisdiction over a particular crime.

*State v. Darroch*, 305 N.C. 196, 287 S.E.2d 856, 860 (1982) (citations omitted); *In re Vasquez*, 428 Mass. 842, 705 N.E.2d 606, 610 (1999) ("The general rule, accepted as 'axiomatic' by the courts in this country, is that a State may not prosecute an individual for a crime committed outside its boundaries.").

The United States Supreme Court expanded the concept of strict territorial jurisdiction in *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911). In *Strassheim*, Daily, an Illinois resident, was indicted in Michigan for bribery and obtaining money from the State by false pretenses based on misrepresentations with respect to secondhand machinery he sold to the State of Michigan. The Governor of Illinois responded to Michigan's request for a warrant that extradited Daily to Michigan. Daily filed a petition for habeas corpus. At the hearing, Daily presented evidence that he was in Chicago, Illinois, when the money was obtained from Michigan and never entered the state until the fraud was complete. The person who received the funds, a warden in a Michigan prison, had agreed to assist Daily in defrauding the State. The district court granted the petition, finding the facts alleged in the indictment did not constitute a crime against the laws of Michigan. The Supreme Court reversed the order granting the petition. The Court held Michigan could prosecute Daily, reasoning "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." *Id.* at 285, 31 S.Ct 558.

Decisions from other jurisdictions have repeatedly recognized the doctrine set forth in *Strassheim*. *See, e.g., People v. Blume*, 443 Mich. 476, 505 N.W.2d 843, 845 (1993) ("The authority to exercise jurisdiction over acts that occur outside the state's physical borders developed as an exception to the rule against extraterritorial jurisdiction. That exception, however, is 'limited to those acts that are intended to have, and that actually do have, a detrimental effect within the state.' " (quoting *Strassheim*, 221 U.S. at 285, 31 S.Ct. 558)); *Keselica*

*v. Commonwealth,* 24 Va.App. 115, 480 S.E.2d 756, 758 (1997) (recognizing "Result Theory" enunciated in *Strassheim*); *Rios,* 733 P.2d at 249 (referencing *Strassheim* and stating "a state could criminalize acts which occurred outside the state if they produced an effect within the state"); *In re Vasquez,* 705 N.E.2d at 610 (recognizing "effects" doctrine established in *Strassheim* and stating "a State is not deprived of jurisdiction over every criminal case in which the defendant was not physically present within the State's borders when the crime was committed"); *see generally* R.P.D., Annotation, *Absence From State at Time of Offense as Affecting Jurisdiction of Offense,* 42 A.L.R. 272 (1926).

Other states have adopted the *Strassheim* doctrine by enacting a jurisdictional statute. *See* 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.4(c), at 579 (2d ed. 1999) ("A substantial majority of the states today have statutes that adopt an interpretation of the territorial principle substantially more expansive than the traditional common law position."); *see, e.g.,* Ariz.Rev.Stat. Ann. § 13–108(A) (West 2001); Fla. Stat. Ann. § 910.005(1) (West 2001); 720 Ill. Comp. Stat. Ann. 5/1–5 (West 2002); Minn.Stat. Ann. § 609.025 (West 1987); Ohio Rev.Code Ann. § 2901.11(A) (Anderson 2002); Utah Code Ann. § 76–1–201 (1999).

Although states with a specific legislative enactment certainly more clearly define a state's jurisdictional power over criminal conduct outside of its territorial borders, the absence of a state jurisdictional statute is not dispositive. *See Rios,* 733 P.2d at 249 ("While Wyoming does not have a specific statute which permits the exercise of jurisdiction when extraterritorial conduct causes a result in this state, the concept articulated in *Strassheim v. Daily, supra,* does not depend upon the existence of such a statute."); *In re Vasquez,* 705 N.E.2d at 610 (holding, in the absence of a state jurisdictional statute, a state is not precluded from relying on rule in *Strassheim,* given "*Strassheim* Court itself made no reference to the need for such a statutory provision"). Thus, the absence of a South Carolina statute does not prohibit this State's prosecution of out-of-state criminal conduct.[3]

---

3. We note the General Assembly has defined at least two limited situations extending the reach of South Carolina's criminal statutes. *See*

In a case that pre-dates *Strassheim*, South Carolina addressed the concept of extraterritorial jurisdiction, particularly the "effects doctrine." *State v. Morrow*, 40 S.C. 221, 18 S.E. 853 (1893). In *Morrow*, the defendant was indicted pursuant to a South Carolina statute for the offense of procuring medicine for a woman with intent to cause an abortion. The defendant, a resident of Washington, D.C., procured the medication and mailed it to the woman in South Carolina. The woman's use of the medication resulted in an abortion, and ultimately the woman's death. Because the defendant's overt acts took place in Washington, D.C., the Supreme Court considered the question of whether South Carolina had jurisdiction for the charged offense.[4] The Court implicitly recognized the "effects doctrine," stating South Carolina would have jurisdiction over Morrow's acts in the District of Columbia "if the acts there done were intended to take effect in this State, and did there actually take effect. . . ." *Id.* at 237, 18 S.E. at 859. Although the Court acknowledged that courts of one state could not take jurisdiction of offenses committed in another state, it considered the question of whether Morrow's offense "was, in the eye of the law, committed within the limits

---

S.C.Code Ann. § 17-21-30 (2003) ("When any person within the limits of this State shall inflict an injury on any person who at the time the injury is inflicted is beyond the limits of this State or when any person beyond the limits of this State shall inflict an injury on any person at the time within the limits of this State and such injury shall cause the death of the person injured, in either case the person causing such death shall be subject to be indicted, tried and punished in the first case in the county of this State where the person inflicting the injury was at the time when the injury was inflicted and, in the second case, in the county in which it was received."); S.C.Code Ann. § 17-21-50 (2003) ("A person charged as an accessory before the fact may be indicted, tried and punished in the same court and county in which the principal felon might be indicted and tried, although the offense of counseling, hiring or procuring the commission of such felony is committed on the high seas or on land outside of the county either within or without the limits of this State.").

4. Despite testimony that Morrow had acted and formulated his intent within South Carolina, which the Court believed was sufficient to establish jurisdiction in this State, the Court went on to consider Morrow's specific issue by assuming there were no overt acts in South Carolina. Thus, to the extent the Court's analysis could be construed as dicta, we reference *Morrow* for the sole purpose of establishing that our Supreme Court has recognized and applied the "effects doctrine."

of this State." *Id.* at 241, 18 S.E. at 860. Applying this analysis, the Court concluded Morrow committed an offense within South Carolina, given Morrow's acts "provided the effect thereby intended reached the person for whom it was intended while in this State." *Id.* at 238, 18 S.E. at 859.

In 1939, post-*Strassheim,* our Supreme Court again addressed this doctrine in *State v. Farne,* 190 S.C. 75, 1 S.E.2d 912 (1939). In that case, Farne was convicted of uttering a forged bank check and his co-defendant, Kennedy, was convicted of accessory before the fact. Kennedy moved to quash the indictment charging him with accessory before the fact, arguing the alleged offense was committed "both within and without the State." *Id.* at 82, 1 S.E.2d at 915. The indictment alleged the conduct for this charge occurred in Anderson County as well as Asheville, North Carolina, and Nashville, Tennessee. Kennedy asserted "if a person outside of this State procures a felony to be committed in this State by a criminal agent, he is an accessory before the fact, and should be tried in the State where he instigates the crime, and not in the State where such crime is committed by the principal." *Id.* at 83, 1 S.E.2d at 915. Our Supreme Court affirmed Kennedy's conviction. The Court found Kennedy's conduct took place beyond the limits of Anderson County but also in Anderson County where the crime was completed. Even though Kennedy was absent from South Carolina at the time of the offense, he counseled Farne with the intent that the offense be committed within South Carolina. The Court reasoned:

> Although the general rule is that a State or sovereignty cannot punish for offenses committed beyond its territorial limits, it may pass laws in regard to its own citizens which will be binding and obligatory on them when they are beyond such limits, and for the violation of which they may be punished in its Courts, whenever it can find them within its jurisdictions. Aside from this, where a person, being beyond the limits of a State or Country, *puts in operation a force which produces a result and constitutes a crime within those limits,* he is as liable to indictment and punishment, if jurisdiction can be obtained of his person, as if he had been within the limits of the State or Country when the crime was committed.

*Farne,* 190 S.C. at 83, 1 S.E.2d at 915 (citations omitted) (emphasis added).

Although the *Strassheim* doctrine has received limited application by our appellate courts, it has been recognized and adopted as a basis for jurisdiction over criminal conduct outside the territorial borders of South Carolina.

## C.

As evident from the foregoing discussion, the concept of extraterritorial jurisdiction is applicable to the instant case. Dudley, however, did not raise this specific jurisdictional challenge to the circuit court or for that matter in her initial appeal. In light of this procedural defect, we must determine whether extraterritorial jurisdiction is a component of subject matter jurisdiction that can be raised *sua sponte* by this Court. Because our research reveals no South Carolina case directly addressing this issue, we are guided by decisions of other jurisdictions and the analysis of secondary authorities.

The Supreme Court of Massachusetts thoroughly analyzed this issue in a habeas corpus case. *In re Vasquez,* 428 Mass. 842, 705 N.E.2d 606 (1999). Vasquez, a Massachusetts resident, was divorced in 1985 and ordered to pay child support for his two children. In 1987, Vasquez's ex-wife and two children relocated to Oregon without his knowledge. Vasquez never went to Oregon and failed to make child support payments. As a result, Vasquez's ex-wife filed a reciprocal support petition in Oregon under the Uniform Reciprocal Enforcement Support Act. Because authorities in Massachusetts were unable to locate Vasquez to compel payment, Oregon authorities obtained an indictment against him for non-support. Pursuant to a warrant issued by the Governor of Massachusetts, at the extradition request of the Governor of Oregon, Vasquez was arrested. Vasquez filed a petition for a writ of habeas corpus challenging the constitutionality of the restraint of his liberty pending extradition. Vasquez appealed the denial of his petition to the Supreme Court of Massachusetts.

On appeal, Vasquez primarily claimed the courts of Oregon did not have personal jurisdiction over him and, therefore, the Oregon indictment was invalid. Initially, the Court dismissed

Vasquez's claim that the minimum contacts analysis applicable to personal jurisdiction in civil matters also governed criminal cases. The Court specifically found "[t]he cases dealing with personal jurisdiction address issues quite inapposite to the context of a criminal case." *Id.* at 609. The Court reasoned:

> The leading cases, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), dealt with the question whether the courts of one jurisdiction could render a judgment that was valid and binding against a defendant everywhere and so could be carried to another State, where enforcement could be had under the full faith and credit clause of the United States Constitution. Art. IV, § I.

*Id.* Therefore, the Court concluded "[t]he jurisprudence of personal jurisdiction has no bearing on the question whether a person may be brought to a State and tried there for crimes under that State's laws." *Id.* The Court further stated, "[s]uch a claim is not barred by the fact of an individual's presence within the prosecuting State." *Id.*

Several other jurisdictions concur with the analysis of the Supreme Court of Massachusetts. *See, e.g., Black v. State,* 819 So.2d 208 (Fla.Dist.Ct.App.2002) (holding Florida acquired personal jurisdiction over out-of-state defendant for RICO offenses where defendant appeared at trial, and also analyzing the question of whether Florida had subject matter jurisdiction over the defendant's actions committed outside the State of Florida); *State v. Amoroso,* 975 P.2d 505 (Utah Ct.App. 1999) (recognizing, in case to prosecute a nonresident corporate defendant for violations of Utah's Alcohol Beverage and Control Act, the concept of minimum contacts has no application in criminal cases; holding Utah acquired personal jurisdiction through defendant's physical presence at the trial; concluding Utah had subject matter jurisdiction given defendant's conduct constituting an element of the offense occurred within the state); *Rios,* 733 P.2d at 244 (finding question of whether State of Wyoming had jurisdiction to prosecute out-of-state defendant for interfering with child custody in Wyoming was a question of subject matter jurisdiction and not personal jurisdiction given defendant appeared at trial; recog-

nizing the concept of minimum contacts has no application in criminal cases).

We also note that several jurisdictions, including South Carolina, have implicitly recognized that an out-of-state defendant, who appears at trial, may still challenge a court's lack of subject matter jurisdiction. *See, e.g., Morrow,* 40 S.C. at 237, 18 S.E. at 859 (stating out-of-state defendant submits to personal jurisdiction in prosecuting state where he voluntarily returns, but State's subject matter jurisdiction over defendant's out-of-state conduct acquired where effect intended for the prosecuting state); *Moreno v. Baskerville,* 249 Va. 16, 452 S.E.2d 653 (1995) (addressing for the first time in a petition for habeas corpus the issue of whether Virginia had jurisdiction to prosecute out-of-state defendant for crime of drug trafficking committed in Arizona).

Based on this authority, we conclude Dudley's jurisdictional challenge is properly viewed as one of subject matter jurisdiction and more specifically, as one of extraterritorial jurisdiction. Thus, it may be raised at any time, including for the first time on appeal. *See* 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.4(d), at 591 (2d ed. 1999) ("[I]f the trial record establishes that the acts and consequences occurred at places that would put the crime outside of the state's jurisdiction, that object can first be raised on appeal or even in a habeas petition if the convicted defendant remains in custody.").

## II.

■■■ Applying the concept of extraterritorial jurisdiction to the instant case, we find no evidence that would support South Carolina exercising jurisdiction over Dudley for either trafficking in cocaine or conspiracy to traffic cocaine.

In 1997, Dudley was charged with trafficking in cocaine pursuant to section 44–53–370(e)(2)(d), which provides:

(e) Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or *otherwise aids, abets,* attempts, or *conspires to* sell, manufacture, cultivate, deliver, purchase, *or bring into this State,* or who is knowingly in

actual or constructive possession or who knowingly attempts to become in actual or constructive possession of:

\* \* \*

(2) ten grams or more of cocaine or any mixtures containing cocaine, as provided in Section 44–53–210(b)(4), is guilty of a felony which is known as "trafficking in cocaine" and, upon conviction, must be punished as follows if the quantity involved is:

\* \* \*

(d) two hundred grams or more, but less than four hundred grams, a mandatory term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of one hundred thousand dollars.

S.C.Code Ann. § 44–53–370(e)(2)(d) (Supp.1996) (emphasis added). Dudley was also charged with conspiracy to traffic cocaine under this same code section.

▓▓▓▓▓ Conspiracy is defined as the "combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means." S.C.Code Ann. § 16–17–410 (2003). The gravamen of conspiracy is an agreement or combination. *State v. Gunn*, 313 S.C. 124, 133–34, 437 S.E.2d 75, 80 (1993). "The overt acts committed in furtherance of the conspiracy are not elements of the crime. Under South Carolina law, a conspiracy does not require overt acts." *State v. Wilson*, 315 S.C. 289, 294, 433 S.E.2d 864, 867–68 (1993); *see State v. Buckmon*, 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001) (stating a conspiracy may be proven by the specific overt acts done in furtherance of the conspiracy but the crime is the agreement). "To establish the existence of a conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties." *Buckmon*, 347 S.C. at 323, 555 S.E.2d at 405. "It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe his own benefits were dependent upon the success of the entire venture." *State v. Barroso*, 320 S.C. 1, 8–9, 462 S.E.2d 862, 868

(Ct.App.1995), *rev'd on other grounds,* 328 S.C. 268, 493 S.E.2d 854 (1997).

 In order for South Carolina to exercise jurisdiction over the two offenses, the critical determination is whether Dudley "intended a detrimental effect to occur *in this state.*" *Blume,* 505 N.W.2d at 846. "The two key elements of that requirement are specific intent to act and the intent that the harm occur in [South Carolina]." *Id.*

Here, both Stokes and Hale were Virginia residents who telephoned Dudley in Georgia. The entire drug transaction took place in Georgia. In Hale's written statement, he noted he and Stokes left Georgia and "got on 85 north towards [Virginia]." In Stokes's statement, he admitted he normally purchased drugs from someone in Virginia, but contacted Dudley in Atlanta to make a "dope run" because of the "dry spells" in Virginia. Stokes also testified he and Hale left for Virginia the same day they purchased the cocaine in Georgia. Additionally, Hale specifically acknowledged he and Stokes intended to sell the cocaine in Virginia.

Although Dudley may have thought that Stokes and Hale would most likely travel through South Carolina on their way back to Virginia, any inference is speculative given there is no evidence of Dudley's knowledge of her co-conspirators' route. Furthermore, this inference or Dudley's mere knowledge is not sufficient to establish extraterritorial jurisdiction in this State. The prosecutor must have presented evidence that Dudley entered into the conspiracy and engaged in the sale with the intent to have a detrimental effect within South Carolina. *See Blume,* 505 N.W.2d at 844 ("[K]nowledge alone is not enough to exercise extraterritorial jurisdiction. The prosecutor must present evidence that defendant intended to commit an act *with the intent to have a detrimental effect within this state.*").

The officers' traffic stop and ultimate search of Hale's and Stokes's vehicle can only be construed as an intervening act, rather than an overt act necessary to establish extraterritorial jurisdiction. *See State v. Palermo,* 224 Kan. 275, 579 P.2d 718, 720 (1978) ("[A] state does not have jurisdiction over an individual for a crime committed within that state when he was located outside the state, did not intend to commit a crime

within the state, and could not reasonably foresee that his act would cause, aid or abet in the commission of a crime within that state."). To hold otherwise would vest any state along a co-conspirator's route, however circuitous, with jurisdiction over acts committed outside its state limits. This analysis would essentially eviscerate the "effects doctrine."

We find the only evidence is that Dudley, Stokes, and Hale conspired and conducted the drug transaction in Georgia. In terms of the conspiracy charge, the agreement itself constituted the crime, which was completed in Georgia. The financial benefit derived by Dudley was also completed in Georgia and was not dependent on the subsequent acts of Hale and Stokes. Furthermore, there is no evidence that Dudley intended for her acts to create a detrimental effect within South Carolina.[5] As such, South Carolina could not exercise jurisdiction over Dudley for conspiracy to traffic cocaine or trafficking in cocaine. *See State v. McAdams,* 167 S.C. 405, 166 S.E. 405 (1932) (holding in order for South Carolina to prosecute Georgia defendant for conspiracy entered into in Georgia, but completed in South Carolina, the State was required to prove that some overt act was committed in South Carolina by one of the conspirators pursuant to the conspiracy); *see also State v. King,* 211 S.C. 1, 43 S.E.2d 596 (1947) (concluding South Carolina was without jurisdiction to prosecute for swindling assignees of a contract for South Carolina land, who defaulted on the contract with vendor and thus did not own the property, where all parties to the contract were residents of North Carolina, the contracts were signed in North Carolina, all payments with one exception were paid in North Carolina, and the only overt act in South Carolina was the parties viewing the premises prior to signing the contracts).

Furthermore, a review of the language of the statute under which Dudley was charged supports our conclusion. Both

---

5. We recognize the record contains transcriptions of telephone conversations that Stokes made to Dudley from South Carolina. These conversations, however, did not culminate in the criminal conduct for which Dudley was indicted. The conversations took place after the September 10th drug transaction in Atlanta. Furthermore, the controlled buy that was set up from these conversations was unsuccessful and, more importantly, was attempted just outside of Atlanta. Thus, there is no evidence in the record that would support the exercise of jurisdiction in South Carolina.

offenses under section 44–53–370(e)(2)(d) require a specific intent to bring cocaine "into this State." S.C.Code Ann. § 44–53–370(e)(2)(d) (Supp.1996). In terms of the trafficking charge, Dudley must have intended to aid and abet the bringing of cocaine into South Carolina. *See State v. Leonard*, 292 S.C. 133, 137, 355 S.E.2d 270, 272 (1987) (stating "[i]n order to be guilty as an aider or abettor, the participant must be chargeable with knowledge of the principal's criminal conduct"); *Blume*, 505 N.W.2d at 852 ("One who aids and abets the commission of a substantive crime that occurs in Michigan is not automatically subject to trial in Michigan. Defendant must have intended to aid and abet a crime in Michigan. Mere knowledge is not enough to exercise jurisdiction."). As to the conspiracy charge, Dudley must have knowingly conspired to bring cocaine into South Carolina. *See Gunn*, 313 S.C. at 134, 437 S.E.2d at 80–81 (holding in order to establish a conspiracy " '[w]hat is needed is proof they intended to act *together* for their *shared mutual benefit*-within the scope of the conspiracy charged' " (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir.1992))). There is no evidence that Dudley intended for the cocaine to be brought into South Carolina.[6]

Because there is no evidence that Dudley's conduct fits within the ambit of section 44–53–370(e)(2)(d), South Carolina was without jurisdiction to prosecute her. *See State v. Muldrow*, 348 S.C. 264, 268, 559 S.E.2d 847, 849 (2002) (stating appellate courts are "bound to construe a penal statute strictly against the State and in favor of the defendant"); William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 94 (4th ed. 2002) ("Unless the defendant's conduct is encompassed within the reach of the statute under which he is charged, the court lacks subject matter jurisdiction to try him.").

---

6. We note the dissent finds the evidence sufficient to support extraterritorial jurisdiction for the offense of trafficking in cocaine, but not conspiracy to traffic cocaine. Regarding the trafficking offense, the dissent reasons "Dudley demonstrated specific intent to act and the intent that the harm occur in South Carolina." It is difficult to reconcile the contradictory result reached by the dissent given both offenses under section 44–53–370(e)(2)(d) require a specific intent to bring cocaine "into this State." S.C.Code Ann. § 44–53–370(e)(2)(d) (Supp.1996).

This conclusion is consistent with other jurisdictions. *See, e.g., Commonwealth v. Fafone,* 416 Mass. 329, 621 N.E.2d 1178 (1993) (finding Massachusetts lacked territorial jurisdiction over crime of accessory before the fact of trafficking in cocaine where alleged criminal acts took place in Florida and there was no evidence Florida defendant knew cocaine would be distributed within Massachusetts); *Blume,* 505 N.W.2d at 848–52 (concluding Michigan did not have extraterritorial jurisdiction to prosecute Florida defendant for conspiracy to deliver or possession with intent to deliver more than 650 grams of cocaine, and aiding and abetting the manufacture or possession with intent to manufacture or deliver more than 650 grams of cocaine, where entire sale to Michigan resident took place in Florida and there was no evidence defendant acted with intent to have a detrimental effect in Michigan); *Moreno,* 452 S.E.2d at 655 (concluding Virginia did not have jurisdiction to try defendant for drug trafficking committed in Arizona, even though drugs were eventually sold in Virginia, where sale of drugs in Virginia was not "immediate result" of distribution of drugs in Arizona); *cf. State v. Chan,* 188 Ariz. 272, 935 P.2d 850 (Ct.App.1996) (finding Arizona had jurisdiction to prosecute out-of-state defendants for conspiracy to commit theft and attempted trafficking where in-state co-conspirator's overt actions of driving into and participating in the actual "sale" within the State of Arizona could be imputed to the defendants); *Black,* 819 So.2d at 210–12 (holding Florida had subject matter jurisdiction to try out-of-state defendant for RICO offenses, communications fraud, and conspiracy to commit RICO offenses where out-of-state defendant made telephone sales calls and sent faxes to Florida county for purpose of defrauding county); *People v. Govin,* 213 Ill.App.3d 928, 157 Ill.Dec. 381, 572 N.E.2d 450 (1991) (concluding charge of trafficking in cocaine properly brought in Illinois where Florida defendant acted with intent that cocaine be delivered in Illinois, and aided and abetted a transaction through an Illinois confidential informant by which cocaine was caused to be delivered in Illinois); *State v. Campa,* 2002 WL 471174 (Ohio Ct.App.2002) (finding, in a drug-trafficking case, an offer to sell drugs over the telephone to a person in Ohio was sufficient to establish jurisdiction in Ohio even if the person offering to sell the drugs was outside the state); *see generally*

B.C. Ricketts, Annotation, *Jurisdiction to Prosecute Conspirator Who was Not in State at Time of Substantive Criminal Act, For Offense Committed Pursuant to Conspiracy*, 5 A.L.R.3d 887 (1966 & Supp.2002).

Although we recognize this State's legitimate interest in protecting its citizens from the societal effects of drug trafficking, this alone is not sufficient to confer jurisdiction. We would note the absence of jurisdiction in South Carolina does not preclude the prosecution of Dudley's actions. Under the facts of this case, we believe either Georgia or Virginia would have jurisdiction. *Cf. Marquez v. State*, 12 P.3d 711 (Wyo. 2000) (holding Wyoming had jurisdiction to prosecute defendant for drug conspiracy where defendant entered into the conspiracy in New Mexico, was arrested pursuant to a traffic violation in Colorado, but intended for the conspiracy to have an effect within the State of Wyoming); *see also* S.C.Code Ann. § 44–53–410 (2002) ("If a violation of this article [Article 3, Narcotics and Controlled Substances] is a violation of a Federal law or the law of another state, the conviction or acquittal under Federal law or the law of another state for the same act is a bar to prosecution in this State.").

Because the circuit court lacked jurisdiction, we vacate both of Dudley's convictions.[7] *See State v. Funderburk*, 259 S.C. 256, 261, 191 S.E.2d 520, 522 (1972) (stating "the acts of a court with respect to a matter as to which it has no jurisdiction are void").

## CONCLUSION

South Carolina recognizes the common law concept of extraterritorial jurisdiction. Because extraterritorial jurisdiction is a component of subject matter jurisdiction, it may be raised for the first time on appeal or *sua sponte* by an appellate court. Based on the facts of this case, South Carolina lacked jurisdiction over Dudley for the offenses of trafficking in cocaine and conspiracy to traffic cocaine. Accordingly, we vacate both of her convictions.

**VACATED.**

---

7. In light of our disposition, we need not address Dudley's remaining issue concerning the denial of her directed verdict motion for the conspiracy charge.

HEARN, C.J., CURETON, J., HUFF, J., HOWARD, J. and SHULER, J., concur.

ANDERSON, J. and GOOLSBY, J., dissent.

STILWELL, J., concurs in part and dissents in part in a separate opinion.

ANDERSON, J. (dissenting):

I respectfully dissent. I disagree with the reasoning and analysis of the majority. The holding of the majority misconstrues and misapplies the law extant in regard to: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) extraterritorial jurisdiction. I **VOTE** to **AFFIRM** the conviction for trafficking cocaine.

## *FACTS/PROCEDURAL BACKGROUND*

On September 10, 1997, Officer Matthew Durham of the Anderson County Sheriff's Department noticed a vehicle weaving along Interstate 85 and making an improper lane change. Durham stopped the car and asked driver Earl Hale to exit the vehicle. Hale told Officer Durham that he was returning from a party in Atlanta. Passenger Donald Stokes told Durham that the two were returning from a funeral in Atlanta. After talking with Hale and giving him a warning, Durham asked Hale if he could search the vehicle. During his conversation with Hale, Durham allowed Stokes to exit the car. Hale gave Durham permission to search the vehicle. Deputy James Littleton spoke with Hale and Stokes while Durham proceeded with the search. Durham found in the trunk of the vehicle a paper bag containing a ziplock bag wrapped in a clear plastic bag. The ziplock bag contained cocaine. Hale and Stokes attempted to escape, but they were apprehended by the officers.

Hale and Stokes, who were both from Virginia, gave voluntary statements to the police. In Stokes' statement, he indicated he was acquainted with Dudley, who lived in Atlanta, and that Dudley knew where to obtain large amounts of cocaine. According to the statements of both men, Hale and Stokes traveled to Atlanta, partied at a gentlemen's club, and then contacted Dudley the next morning. Dudley met with

the two men, who gave her a total of $5,000 to take to her supplier. Thereafter, Dudley returned to Hale and Stokes' hotel to deliver the cocaine. Hale and Stokes were planning to sell the drugs in their home state of Virginia, but they were stopped in Anderson County, South Carolina, before they could make it home.

Hale and Stokes agreed to assist police officers in prosecuting narcotics cases in South Carolina and Virginia. They began working with the Drug Enforcement Agency. While agents were monitoring and recording the conversations, Stokes made several telephone calls to Dudley to set up another cocaine purchase. Stokes asked Dudley to meet him in South Carolina, but she refused. Dudley finally agreed to meet Stokes in Atlanta. She was arrested in Atlanta and charged for her actions in providing to Stokes and Hale the cocaine, which was confiscated in Anderson County.

Hale and Stokes both testified against Dudley at her trial. Hale stated that Dudley supplied the cocaine to him and he intended to resell it. Stokes declared that Dudley brought them nine ounces of cocaine to their hotel.

### *LAW/ANALYSIS*

Dudley contends the Circuit Court lacked jurisdiction to prosecute her in South Carolina because she never entered the state. I disagree.

### I. Subject Matter Jurisdiction

Dudley never entered South Carolina during her transaction with Hale and Stokes. The indictment charging Dudley with trafficking stated that Dudley "did in Anderson County, South Carolina on or about September 10, 1997 traffic in cocaine by aiding and abetting the bringing into the State of South Carolina 200 or more grams of cocaine."

Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the proceedings in question belong. *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). A Circuit Court acquires subject matter jurisdiction over a criminal matter if: (1) there has been an indictment which sufficiently states the offense; (2) the defendant has waived presentment of the indictment;

or (3) the offense is a lesser included offense of the crime charged in the indictment. *State v. Primus*, 349 S.C. 576, 564 S.E.2d 103 (2002); *State v. Timmons*, 349 S.C. 389, 563 S.E.2d 657 (2002); *State v. Lynch*, 344 S.C. 635, 545 S.E.2d 511 (2001).

Questions regarding subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court. *State v. Brown*, 351 S.C. 522, 570 S.E.2d 559 (2002); *see also State v. Ervin*, 333 S.C. 351, 510 S.E.2d 220 (Ct.App.1998) (holding issues related to subject matter jurisdiction may be raised at any time). Furthermore, lack of subject matter jurisdiction may not be waived, even by consent of the parties, and should be taken notice of by this Court. *Brown v. State*, 343 S.C. 342, 540 S.E.2d 846 (2001).

An indictment is sufficient to confer jurisdiction if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer. *Lynch*, 344 S.C. at 639, 545 S.E.2d at 513; *Browning v. State*, 320 S.C. 366, 465 S.E.2d 358 (1995). In South Carolina, an indictment "shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided." S.C.Code Ann. § 17–19–20 (1985). An indictment must: (1) enumerate all the elements of the charged offense, regardless of whether it is a statutory or common law offense; and (2) recite the factual circumstances under which the offense occurred. *Id.; State v. Evans*, 322 S.C. 78, 470 S.E.2d 97 (1996). Thus, an indictment passes legal muster if it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood. *State v. Reddick*, 348 S.C. 631, 560 S.E.2d 441 (Ct.App.2002).

To convey jurisdiction, an indictment must apprise the defendant of the elements of the offense intended to be

charged and inform the defendant of the circumstances he must be prepared to defend. *Locke v. State,* 341 S.C. 54, 533 S.E.2d 324 (2000); *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998); *see also Browning,* 320 S.C. at 368, 465 S.E.2d at 359 (true test of sufficiency of indictment is not whether it could be made more definite and certain, but whether it contains necessary elements of offense intended to be charged and sufficiently apprises defendant of what he must be prepared to meet). An indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient. *State v. Shoemaker,* 276 S.C. 86, 275 S.E.2d 878 (1981). South Carolina courts have held that the sufficiency of an indictment must be viewed with a practical eye. *State v. Adams,* 277 S.C. 115, 283 S.E.2d 582 (1981), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

Dudley was charged in 1997 with trafficking cocaine pursuant to S.C.Code Ann. § 44–53–370(e)(2)(d) (Supp.1996). This section provides:

> Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or *otherwise aids, abets, attempts,* or conspires to sell, manufacture, cultivate, deliver, purchase, or *bring into this State,* or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of:
>
> . . . .
>
> ten grams or more of cocaine or any mixtures containing cocaine, as provided in Section 44–53–210(b)(4), is guilty of a felony which is known as "trafficking in cocaine" and, upon conviction, must be punished as follows if the quantity involved is:
>
> . . . .
>
> *two hundred grams or more,* but less than four hundred grams, a mandatory term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of one hundred thousand dollars.

(Emphasis added).

Dudley does not complain that her indictments were invalid. Here, the indictments gave the time, place, and manner of the

events in which Dudley was accused of having participated. The indictments "charge[d] the crime[s] substantially in the language of the ... statute prohibiting the crime[s]." S.C.Code Ann. § 17–19–20 (1985). The statute is broad and plenary. Additionally, the statute is imbued with specificity in regard to acts and conduct consisting of "otherwise aids, abets, attempts" and "bring into this State." *Id.*

Moreover, both indictments apprised Dudley of the charges against her and the circumstances she must be prepared to defend. Furthermore, the indictments contained the necessary elements of the offenses charged and informed the Circuit Court of the sentence to pronounce. Subject matter jurisdiction over these crimes attached when valid indictments were issued by the grand jury. Concomitantly, the indictments in the present case conferred subject matter jurisdiction on the Circuit Court to try Dudley.

## II. Personal Jurisdiction

Although Dudley couched her issue on appeal as a question of subject matter jurisdiction, she actually complains that the Circuit Court lacked personal jurisdiction over her.

Generally, jurisdiction of the person is acquired when the party charged is arrested or voluntarily appears in court and submits himself to its jurisdiction. *State v. Douglas,* 245 S.C. 83, 138 S.E.2d 845 (1964); *State v. Langford,* 223 S.C. 20, 73 S.E.2d 854 (1953). A defendant may waive any complaints he may have regarding personal jurisdiction by failing to object to the lack of personal jurisdiction and by appearing to defend his case. *See State v. Bethea,* 88 S.C. 515, 70 S.E. 11 (1911); *see also State v. Castleman,* 219 S.C. 136, 138–39, 64 S.E.2d 250, 251 (1951) ("A defendant may, of course, waive his objection to the jurisdiction of the Court over his person . . . ."); *Town of Ridgeland v. Gens,* 83 S.C. 562, 65 S.E. 828 (1909) (the court found no personal jurisdiction problem where the defendant appeared for his trial, was represented by an attorney, and defended his case on the merits).

In the instant case, Dudley appeared at trial and defended her case on the merits. She did not object to personal jurisdiction before the Circuit Court. As she consented to the Circuit Court's exercise of personal jurisdiction over her and

did not raise any objection, Dudley failed to preserve this issue for review. *See State v. Lee,* 350 S.C. 125, 564 S.E.2d 372 (Ct.App.2002) (issue must be raised to and ruled upon by trial judge to be preserved for appellate review). Because this issue was not preserved, it is improper for this Court to consider it on appeal.

### III. Exercise of Extraterritorial Jurisdiction by South Carolina

Facially and legally, this Court has subject matter jurisdiction by virtue of a valid indictment under South Carolina precedent. That conclusion does not end the inquiry. It is essential to analyze the exercise of extraterritorial jurisdiction over acts committed outside the state by Dudley.

**"It is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction."** *State v. Legg,* 9 S.W.3d 111, 114 (Tenn.1999) (emphasis added).

The general rule is that a state may not prosecute an individual for a crime committed outside its boundaries. *In re Vasquez,* 428 Mass. 842, 705 N.E.2d 606 (1999); *see also People v. Blume,* 443 Mich. 476, 505 N.W.2d 843 (1993) (general rule is that jurisdiction is proper only over offenses as may be committed within the prosecuting state's jurisdiction). Yet, "blind adherence to a purely territorial concept of jurisdiction inadequately addresses the state's interest in protecting its citizens from the results of criminal activity." *Blume,* 505 N.W.2d at 845 n. 6.

Despite the general rule, a state is not deprived of jurisdiction over every criminal case in which the defendant was not physically present within the state's borders when the crime was committed. *Vasquez,* 705 N.E.2d at 610. The authority to exercise jurisdiction over acts that occur outside the state's physical borders developed as an exception to the rule against extraterritorial jurisdiction. *Blume,* 505 N.W.2d at 845. That exception, however, is limited to those acts that are intended to have, and that actually do have, a detrimental effect within the state. *Id.*

The seminal case in this country elucidating the right of a state to exercise extraterritorial jurisdiction is *Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911). *Strassheim* edifies:

**Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.** We may assume, therefore, that Daily is a criminal under the laws of Michigan.

Of course, we must admit that it does not follow that Daily is a fugitive from justice. On the other hand, however, we think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete, if not before.

*Id.* at 285, 31 S.Ct. at 560, 55 L.Ed. at 738 (citations omitted) (emphasis added); *see also State v. Winckler*, 260 N.W.2d 356 (S.D.1977) (state jurisdiction properly lies when acts done outside its jurisdiction are intended to produce and do produce a detrimental effect within that jurisdiction).

An excellent academic explication of a state's extraterritorial criminal jurisdiction is *In re Vasquez*, 428 Mass. 842, 705 N.E.2d 606 (1999). *Vasquez* inculcates:

The general rule, accepted as "axiomatic" by the courts in this country, is that a State may not prosecute an individual for a crime committed outside its boundaries. *See, e.g., Neilsen v. Oregon*, 212 U.S. 315, 321, 29 S.Ct. 383, 53 L.Ed. 528 (1909); *Huntington v. Attrill*, 146 U.S. 657, 673, 13 S.Ct. 224, 36 L.Ed. 1123 (1892); *Commonwealth v. Booth*, 266 Mass. 80, 84, 165 N.E. 29 (1929) (rule against extraterritorial application of criminal laws "is a general principle"); *State v. Cochran*, 96 Idaho 862, 864, 538 P.2d 791 (1975); *Trindle v. State*, 326 Md. 25, 31, 602 A.2d 1232 (1992); *Blume, supra* at 480, 505 N.W.2d 843; *People v. Devine*, 185 Mich. 50, 52–53, 151 N.W. 646 (1915); *State v. Karsten*, 194 Neb. 227, 229, 231 N.W.2d 335 (1975); *State v. Hall*, 114

N.C. 909, 911, 19 S.E. 602 (1894) (rule is a "general principle of universal acceptation"); *Ex parte McNeely,* 36 W.Va. 84, 92, 14 S.E. 436 (1892); 21 Am.Jur.2d § 343 (1981) (rule is "fundamental"); Allen & Ratnaswamy, *Heath v. Alabama: A Case Study of Doctrine and Rationality in the Supreme Court,* 76 J.Crim. L. & Criminology 801, 815 n. 144 (1985). The source of this rule is unsettled and has not been ascribed to any particular constitutional provision, *see, e.g., State ex rel. Juvenile Dep't v. W.,* [34 Or.App. 437] *supra* at 442 n. 5, 578 P.2d 824, yet it has been called by one commentator "too deeply embedded in our law to require justification." Laycock, *Equal Citizens of Equal and Territorial States: The Constitutional Foundations of Choice of Law,* 92 Colum. L.Rev. 249, 318 (1992).

**Despite this general rule, however, a State is not deprived of jurisdiction over every criminal case in which the defendant was not physically present within the State's borders when the crime was committed.** Two major exceptions to the territorial principle might permit Oregon to exercise jurisdiction over the defendant in this case, even though he has never been within its borders.

**The "effects" doctrine provides that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect."** *Strassheim v. Daily, supra* **at 285, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735. The jurisdictional basis provided by** *Strassheim* **has been utilized by a number of States to permit prosecution of individuals not within the State at the time they violated the State's law . . . .**

*Id.* at 610–11 (footnote omitted) (emphasis added).

The exception to the rule against extraterritorial jurisdiction requires a finding that the defendant intended a detrimental effect to occur in this state. *Blume,* 505 N.W.2d at 846. The two key elements of the requirement for exercising extraterritorial jurisdiction in the case *sub judice* are specific intent to act and the intent that the harm occur in South Carolina. *See Blume,* 505 N.W.2d at 846. Some states refer to this exception as the "effects doctrine." *See Vasquez,* 705 N.E.2d at 610. "Although some courts consider the effects doctrine to be an exception to the general rule against extraterritorial

jurisdiction, others point out that it is not an exception at all, but a logical application of the general rule in that the crime occurs where the effect is felt, not where the offender is located." *Id.* at 611 n. 4.

The proper analysis to determine whether extraterritorial jurisdiction can be exercised over trafficking in cocaine occurring in another state is to consider whether the trafficking charge could be established by the evidence. *Blume,* 505 N.W.2d at 846. Then, the Court must determine whether the trafficking was intended to occur in South Carolina. *Id.*

A crime is committed where the criminal act takes effect. *Simpson v. State,* 92 Ga. 41, 17 S.E. 984 (1893). This is true even though the accused is never actually present within the state's jurisdiction. *Winckler,* 260 N.W.2d at 360. One who puts in force an agency for the commission of a crime is deemed to have accompanied the agency to the point where it takes effect. *Id.* The state is then justified in punishing the cause of the harm as if he were in fact present at the effect should the state ever succeed in getting him within its power. *Id.*

This Court should not approve the exercise of jurisdiction over Dudley unless the State can prove that Dudley intended the crime to occur in South Carolina.

A thorough review of the testimony discloses that Dudley transferred over 200 grams of cocaine to Stokes and Hale that they intended to sell. Dudley played an integral part in providing the cocaine that was brought into South Carolina. Giving efficacy to the law of circumstantial evidence in this state, it is inferable that Stokes and Hale intended to possess or sell the cocaine somewhere. Dudley knew that Stokes and Hale were from Virginia and would most probably travel through South Carolina while in possession of the contraband.

At common law, criminal jurisdiction was based primarily on the territorial principle. Courts have created the doctrine of constructive presence in order to allow a state to punish an offender not located within the state when the offender set in motion the events which culminated in a harm in the prosecuting state. The doctrine is articulated in *Simpson v. State,* 92 Ga. 41, 17 S.E. 984 (1893). In *Simpson,* the defendant, who had been standing in South Carolina at the time he shot at a

person in Georgia, was convicted in Georgia. *Simpson* applied the doctrine of constructive presence by concluding that the act of the accused took effect in Georgia.

The exercise of legislative criminal jurisdiction is recognized by reference to statutory language identifying the proscribed conduct. This state in the statutory verbiage encapsulates an objective territorial effect and proscribes conduct that occurs outside of the state's physical borders.

Here, Dudley demonstrated specific intent to act and the intent that the harm occur in South Carolina.

## CONCLUSION

The Circuit Court had personal jurisdiction, subject matter jurisdiction, and extraterritorial jurisdiction over Dudley. I **VOTE** to **AFFIRM** the conviction and sentence of Dudley for trafficking in cocaine.

GOOLSBY, J., concurs.

STILWELL, J., (concurring in part and dissenting in part):

I agree with the analysis and conclusions reached by both the majority opinion and Judge Anderson's dissent on the issues of basic subject matter and personal jurisdiction. However, because I am not convinced that extraterritorial jurisdiction is equivalent to subject matter jurisdiction, I respectfully dissent.

The fundamental issue is whether the defense that the State exceeded its territorial jurisdiction should have been raised to and ruled on by the trial court. Because it clearly was not, the only way this court can address it is to equate it to subject matter jurisdiction. This is a novel issue in South Carolina, and a review of the sparse case law from our state and the leading cases from other states convinces me it is not subject matter jurisdiction. Therefore, I believe this issue is not preserved and should not be addressed for the first time on appeal. *See State v. Hicks*, 330 S.C. 207, 216, 499 S.E.2d 209, 214 (1998) (issue must be raised to and ruled on by the trial court to be preserved for appellate review); *Hendrix v. Eastern Dist.*, 320 S.C. 218, 219, 464 S.E.2d 112, 113 (1995) (unpreserved issue should not be addressed on appeal).

The limited number of cases from our supreme court shed no light on the question of whether extraterritorial or, as it is sometimes called "territorial," jurisdiction is equivalent to subject matter jurisdiction. However, it is instructive to note that in the two leading South Carolina cases on the subject, *State v. Morrow*, 40 S.C. 221, 230, 18 S.E. 853, 856 (1893) and *State v. Farne*, 190 S.C. 75, 82, 1 S.E.2d 912, 915 (1939), no error preservation issues were present because objections to the court's jurisdiction were appropriately made in the trial court, fully argued, and ruled on. Therefore, our supreme court did not need to specify whether the issue was subject matter or some other type of jurisdiction. It was referred to simply as a question of "jurisdiction."

The same holds true for the cases from other jurisdictions cited in the majority opinion. *In Re Vasquez*, 428 Mass. 842, 705 N.E.2d 606 (1999), is a case heavily relied on by the majority for the proposition that the issue involved is not personal jurisdiction. I do not agree, however, with the inference drawn therefrom that because it is not personal jurisdiction, it must be subject matter jurisdiction. There is no such holding in *Vasquez*. Indeed, the court specifically stated it was addressing solely the question of whether Vasquez' arrest pursuant to the Massachusetts Governor's Warrant was appropriate under the laws of Massachusetts. The court noted Vasquez' argument, which the court viewed as a claim the State of Oregon had no legislative jurisdiction to criminalize acts occurring outside Oregon's boundaries, could be made in the Oregon courts, and if he is dissatisfied with the determination made by the Oregon courts "and *if he has properly preserved it there*, he may petition the Supreme Court of the United States for a writ of certiorari." *Id.* at 610 (emphasis added).

Virtually all, if not all, of the other cases ruling on the subject of territorial jurisdiction did so after a hearing on the issue or a trial on the merits, and the ultimate conclusion turns on the evidence, or lack thereof, of the defendant's intent that the act have a detrimental effect in the state conducting the prosecution. The conclusion reached by the majority that South Carolina cannot exercise extraterritorial jurisdiction over Dudley hinges on its finding that there is no evidence Dudley intended for her act to create a detrimental

effect within South Carolina. This is the identical result reached by a divided court in Michigan in *People v. Blume,* 443 Mich. 476, 505 N.W.2d 843 (1993). The difference in this case and·the *Blume* case, however, is that lack of territorial jurisdiction was raised to and ruled on by the trial court in the *Blume* case and was a proper subject for appeal. 505 N.W.2d at 845, 849 n. 19.

Subject matter jurisdiction is generally determined as a matter of law, requiring little if any evidence, particularly evidence of the intent of the accused. I frankly do not know whether extraterritorial jurisdiction is a part of personal jurisdiction, or is a third kind of jurisdiction not yet clearly articulated as such by the courts of South Carolina. I am nevertheless convinced it is an issue that must be raised to and ruled on by the trial court, as well as properly briefed to this court to warrant our addressing it. Because Dudley did neither, I would affirm her conviction.